UNITED STATES of America,
Plaintiff–Appellant,

v.

Monica FRAZIER, Defendant–Appellee.

No. 91–3585.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1992.

Decided Nov. 16, 1992.

Thomas Edward Leggans (argued), Office of the U.S. Atty., Criminal Div., Fairview Heights, Ill., for U.S.

Renee E. Schooley, Federal Public Defender (argued), Office of the Federal Public Defender, East St. Louis, Ill., for Frazier.

Before CUMMINGS and COFFEY, Circuit Judges, and GIBSON, Senior Circuit Judge.*

COFFEY, Circuit Judge.

Monica Frazier was found guilty by a jury of one count of embezzling money from a labor organization in violation of 29 U.S.C. § 501(c) and one count of making a false statement in a matter within the jurisdiction of a United States agency in violation of 18 U.S.C. § 1001. Pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), the district court sentenced Frazier to serve five years of probation on each count, with the terms of probation to run concurrently. The Government in its appeal, which we have jurisdiction to hear under 18 U.S.C. § 3742(b), argues that the district court erred in ordering an eleven-level downward departure in the defendant's offense level. We agree, and vacate the defendant's sentence and remand for resentencing.

I.

Frazier was the secretary-treasurer of Local 143–R of the International Food and Commercial Worker's Union ("Union") at the Belleville Shoe Company in Belleville, Illinois. It was the Union's practice to pay Frazier an hourly wage for her Union work. In January 1986, the Union's executive board, by resolution, replaced this system of paying Frazier with a flat $200 monthly salary. Despite this change in her salary structure, Frazier saw fit to pay herself unauthorized hourly wages from Union funds, in addition to the newly-instituted monthly salary. Frazier successfully concealed her embezzlement scheme from the Union's board and its membership at the Belleville Shoe Company for a period of time, but her scam was uncovered during a 1989 audit by the United States Department of Labor. In a futile attempt to cover up her scam, Frazier submitted a bogus Union executive board resolution to the federal investigators purportedly authorizing her to continue paying herself hourly wages. In total, Frazier embezzled

* The Honorable Floyd R. Gibson, of the Eighth Circuit, is sitting by designation.

$41,582.60 from the Union, forcing the Union local to dissolve because of lack of funds. Frazier was indicted for embezzlement and making a false statement, and on January 24, 1991, a jury found her guilty as charged.

At the sentencing hearing held October 7, 1991, the district court calculated the defendant's total Guidelines offense level at 17. This total was arrived at by taking the defendant's base offense level of four, *see* U.S.S.G. §§ 2B1.1 & 2E5.4, adding seven levels because she embezzled more than $40,000, *see* § 2B1.1(b)(1)(H), and adding a total of six levels because more than minimal planning was involved in the offense, *see* § 2B1.1(b)(5) (two-level increase), the defendant willfully obstructed justice, *see* § 3C1.1 (two-level increase), and the defendant abused a position of trust, *see* § 3B1.3 (two-level increase). Because this was the defendant's first conviction, her criminal history category was I. *See* § 4A1.1; *Guidelines Manual*, at 5.2 (sentencing table). The Guidelines range for Frazier's sentence was thus 24–30 months. Neither the Government nor the defendant challenges this calculation on appeal, but the Government does challenge the district court's decision to order a downward departure in the defendant's offense level from seventeen to six. Through this departure the court was able to impose a sentence of five years probation without any term of imprisonment.

## II.

Departures from the Guidelines range are not permitted unless the district court "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by ... the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. In reviewing a departure under the Guidelines,

"we first determine whether it was imposed in violation of law or as a result of

an incorrect application of the Guidelines (considered in light of the relevant policy statements) that govern departure decisions. If so, a remand is required. If, however, we conclude that departure is proper, we must then look to whether the extent of the departure is unreasonable." *United States v. Andruska*, 964 F.2d 640, 644 (7th Cir.1992) (citing *Williams v. United States*, —— U.S. ——, ——, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992); 18 U.S.C. § 3742(f)(1) & (2)). Whether the district court's stated grounds for departure are legitimate is a legal question, which we review *de novo. United States v. Lewis*, 954 F.2d 1386, 1396 (7th Cir.1992).

### A.

The district court reduced the defendant's offense level from seventeen to six pursuant to U.S.S.G. § 5K2.13, policy statement, which provides that

"[i]f the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public."

In explaining its reasoning for departing downward, the district court stated that it found that Frazier "is now and has for a long time suffered from some type of emotional or mental condition." The court based this finding on written evaluations of the defendant's mental health by a psychologist and a psychiatrist[1] and on the court's own observations of the defendant during and after the trial. The Government objected to the departure, properly pointing out that § 5K2.13 required that Frazier demonstrate that her reduced mental capacity contributed to the commission of her offense. In the Government's view, the defendant failed to establish a nexus be-

---

**1.** The mental health evaluations were submitted to the district court to assist in the defendant's sentencing. The evaluations were based on extensive interviews of the defendant, personality and intelligence testing of the defendant, and a review of the defendant's mental health history.

tween her mental capacity and her offense. The district court, however, reasoned that "[i]f a person is of diminished capacity, doesn't it almost by definition mean that it has to have had some connection with [the offense]? ... I don't think that it's the intent of the guidelines that you have to show a causal relationship like we do in a negligence case or something like that."

 This downward departure was an incorrect application of § 5K2.13. A district court may not justify a § 5K2.13 downward departure by "[p]ointing to a mental condition, without assessing whether the condition amounts to '*significantly* reduced mental capacity' (emphasis added) or whether this reduction 'contributed to the commission of the offense' ..." *United States v. Gentry*, 925 F.2d 186, 189 (7th Cir.1991) (quoting U.S.S.G. § 5K2.13).[2]

 The district court made no finding that the defendant's mental condition resulted in a significantly reduced mental capacity at the time of the offense. The absence of this finding is not surprising, for the record is barren of any evidence in support thereof. The two mental health evaluations submitted to the district court both concluded that the defendant suffers from a "dysthymic disorder."[3] The psychologist who examined Frazier described this disorder as a "depressed mood" which gives rise to a "loss of interest in almost all usual activities", as well as feelings of sadness, worthlessness, crying, and recurrent thoughts of suicide. The examining psychiatrist described the defendant's dysthymic condition as characterized by "a state of longstanding, [depression] less intense" than a "Major Depression." *Neither* of the mental health evaluations concluded that the defendant "suffered from significantly reduced mental capacity" when she com-

mitted her offense, as is required by U.S.S.G. § 5K2.13. *Gentry*, 925 F.2d at 189. In fact, the examining psychologist reported that Frazier's "thinking was neither loose nor tangential as she could logically and coherently respond to questions. While no formal intellectual testing was done, she appeared to be functioning in at least the Normal Range of Intelligence ..." The psychiatrist reported that Frazier "was alert, fully oriented, and cooperative" and that her thought process was rational and well organized. No gross cognitive effects were observed." The district court's § 5K2.13 departure in the absence of a finding that the defendant's mental condition resulted in a significantly reduced mental capacity at the time of the offense was an incorrect application of the Guidelines.

 The district court did find, as is required under § 5K2.13, that the defendant's mental condition contributed to the commission of her offense. However, the two mental health evaluations the district court relied upon fail to address the question of whether Frazier's dysthymic disorder contributed to the commission of her offense. The district court apparently believed that once a defendant is diagnosed with a mental disorder, that disorder is automatically assumed to contribute to the commission of the defendant's offense. This is not so. A § 5K2.13 departure requires a showing that the defendant's reduced mental capacity contributed to the commission of the offense; such a link cannot be assumed. The district court thus incorrectly applied § 5K2.13 in concluding that the defendant's mental disorder contributed to her crime.

**2.** For this reason, the district court's observations of the defendant at trial provide no basis for ordering a downward departure. Section 5K2.13 focuses the inquiry on the defendant's mental capacity *when she committed the offense.* The district court's observations of the defendant at trial are thus not relevant to the § 5K2.13 inquiry absent some indication that her courtroom behavior is illustrative of her reduced mental capacity at the time of the offense.

**3.** Dysthymia is defined as "a mood disorder characterized by depressed feeling (sad, blue, low, down in the dumps) and loss of interest or pleasure in one's usual activities and in which the associated symptoms have persisted for more than two years but are not severe enough to meet the criteria for major depression." *Dorland's Illustrated Medical Dictionary* 55 (27th ed. 1988).

### B.

Although the district court relied primarily on § 5K2.13 in ordering the downward departure, the court also offered several other reasons to justify the sentence it imposed on the defendant. The court reasoned that

"there is absolutely nothing to be gained by confining this woman to the penitentiary for a period between 24 and 30 months or for that matter, for any lesser time.... I just cannot see where we gain anything by putting her in the penitentiary.

"As far as deterring crime, if what has happened to this woman as a result of this crime does not deter someone, then I think putting her in the penitentiary isn't going to deter them either. I just don't see where we gain anything by it.

"We have to look at society as a whole. It seems to me that society in this case will best be served by placing this woman on probation with some stringent rules and trying to get her back on an even keel where she can support herself and go on with her life and not commit any further crimes."

These reasons are inadequate to support a downward departure. We have held that "[c]ourts are ... not free to depart based on the need for general deterrence." *United States v. Thomas*, 906 F.2d 323, 327 (7th Cir.1990). Neither may courts depart based on their perception of a lack of a need for general deterrence. "It would be difficult to imagine a finding that the Sentencing Commission failed to adequately consider the general deterrent effect of the criminal law.... District courts must justify their departures by reference to *factors particular to the defendant* that the Guidelines inadequately considered." *Id.* (emphasis added). In ordering the departure, the district court thus impermissibly relied on its view that the defendant's incarceration was not necessary for purposes of general deterrence.

More fundamentally, however, "[d]epartures, whether upward or downward, must be linked to the structure of the guidelines." *United States v. Thomas*, 930 F.2d 526, 530 (7th Cir.1991). In departing from the Guidelines, district courts must

"employ the rationale and methodology of the guidelines when considering cases not adequately addressed by existing guidelines. The sentencing judge is thus required to articulate the specific factors justifying the extent of his departure and to adjust the defendant's sentence by utilizing an incremental process that quantifies the impact of the factors considered by the court on the defendant's sentence."

*Id.* at 531. The district court's generalized assertions that "nothing" would be gained by imprisoning the defendant and that "society" would be better off with the defendant sentenced to a probationary period were not linked in any way to the structure of the Guidelines, nor do these assertions represent "factors particular to the defendant that the Guidelines inadequately considered." *Thomas*, 906 F.2d at 327. Departures must "be based on policies found in the guidelines themselves rather than in the personal penal philosophy of the sentencing judge." *United States v. Newman*, 965 F.2d 206, 213 (7th Cir.1992).

### III.

The district court properly found that the Guidelines sentencing range applicable to the defendant Frazier is 24–30 months imprisonment. The district court's eleven level downward departure from this range, however, resulted from an incorrect application of the Sentencing Guidelines. The record before us provides no basis for a downward departure in Frazier's case. The defendant embezzled money from her Union and then lied about it to federal investigators. The Guidelines set forth the proper punishment for the crime committed. Although we are sympathetic with the district court's assertion that the defendant has suffered a great deal because of her crime, sentences must be imposed which are consistent with the dictates of the Guidelines. This one falls far short of that standard. Without further findings by the district court, this case is not one for

departure from the Guidelines. We VA-CATE the defendant's sentence and REMAND to the district court for resentencing in accordance with this opinion.