UNITED STATES of America,
Plaintiff–Appellant,

v.

Larry LEWINSON, Defendant–Appellee.

No. 92–10411.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1993.

Decided March 23, 1993.

Matthew G. Jacobs, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellant.

David G. Meyer, Howrey & Simon, Los Angeles, CA, for defendant-appellee.

Before: CHOY, PREGERSON, and BEEZER, Circuit Judges.

PREGERSON, Circuit Judge:

The government appeals from the district court's judgment imposing a sentence of eight months on defendant Larry Lewinson. This sentence represents a downward departure under Section 5K2.13 of the United States Sentencing Guidelines ("§ 5K2.13"). We affirm.

BACKGROUND

On February 12, 1992, Larry Lewinson pled guilty to one count of mail fraud un-

der 18 U.S.C. § 1341. At the plea hearing, Lewinson admitted that he charged the State of California for salvaging products that were not eligible for state reimbursement. Both Lewinson and the government stipulated that the "scheme began sometime in 1988 and continued to approximately ... September or November of 1989...."

At the subsequent sentencing hearing, the district court determined that the applicable guideline range was 18 to 24 months, based on Criminal History Category I and Offense Level 15. Based on evidence that Lewinson suffered from impaired mental capacity at the time of the offense, the district court departed downward to level 11, resulting in a guidelines range of 8 to 14 months.

On appeal, the government presents three challenges to Lewinson's sentence. First, the government contends that the evidence submitted by Lewinson to establish his diminished capacity does not meet § 5K2.13's requirement that the reduction in defendant's mental capacity be "significant." Second, the government contends that the district court was without authority to depart under § 5K2.13 because Lewinson's diminished capacity was in part the product of his substance abuse. Finally, the government contends that the four level departure is unreasonable.

## DISCUSSION

A. Did the district court err in finding a departure was warranted under § 5K2.13?

■ It is undisputed that § 5K2.13 constitutes legal authority for a downward departure under the Sentencing Guidelines. Therefore, we review for clear error whether the circumstances contained in § 5K2.13 are present. *United States v. Fairless,* 975 F.2d 664, 666 (9th Cir.1992) (quoting *United States v. Takai,* 941 F.2d 738, 742 (9th Cir.1991)); *United States v. Lira–Barraza,* 941 F.2d 745, 746 (9th Cir.1991) (en banc).

"Under the clear error standard, we are bound to accept a [district] court's finding

of fact unless we have a definite and firm conviction that a mistake has been committed." *United States v. Ramos,* 923 F.2d 1346, 1356 (9th Cir.1991). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Service Employees Int'l Union v. Fair Political Prac. Comm'n,* 955 F.2d 1312, 1317 n. 7 (9th Cir.), *cert. denied,* — U.S. —, —, 112 S.Ct. 3056, 3057, 120 L.Ed.2d 922 (1992) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)).

1. Did the district court commit clear error in concluding that Lewinson suffered from a significantly reduced mental capacity?

■ The government contends that the record does not support a finding that the reduction in Lewinson's mental capacity was sufficiently "significant" or "serious" to meet the requirement of § 5K2.13. In support of its position, the government asks us to read into this section a requirement that the "qualifying mental disease be severe, [and] that it affect the defendant's ability to perceive reality." However, the plain language of this section authorizes departure on a showing of "significantly reduced mental capacity" without qualification as to the nature or cause of the reduced capacity (except with respect to voluntary drug use).

■ The record contains substantial evidence that Lewinson suffered from significantly reduced mental capacity at the time he committed the instant offense. For example, one examining psychiatrist noted that Lewinson's long-standing psychological problems were the "most highly significant factors in [Lewinson's] behavior and decision-making during the offense period" and "resulted in a significant impairment in [Lewinson's] mental capacity." Lewinson's treating psychiatrist reported that Lewinson's "conduct at the time of the offenses was directly related to psychological prob-

lems." Moreover, the record contains no controverting evidence on this issue. Thus, the district court's account of the evidence is plausible in light of the record. As such, we cannot reverse on this ground.

2. Did the district court commit clear error in concluding that departure under § 5K2.13 was warranted where Lewinson's reduced mental capacity was in part a product of his voluntary drug use?

■ The government also contends that the district court lacked authority to depart under § 5K2.13 because Lewinson's diminished capacity was, in part, the result of voluntary drug use. Again, we review for clear error whether this aspect of § 5K2.13 is satisfied.

In relevant part, § 5K2.13 provides that departure may be warranted if the significantly reduced mental capacity does "not result[] from voluntary use of drugs or other intoxicants" ("drug-induced exemption"). § 5K2.13. The evidence submitted by Lewinson indicates that his drug use was both a product and a factor of his impaired mental condition. *See* E.R. at 64 ("In Larry's case ... drug use was very likely a source of significant cognitive impairment"; "Larry's drug abuse appears to have been a symptom of his disabled emotional state...."). However, the evidence also shows that Lewinson stopped using drugs in May 1989, about halfway through the period of the ongoing offense. *See* Presentence Report at 4, ¶ 8 (noting criminal conduct occurred from October 1988 through September 1989); *id.* at 10, ¶ 29 (reporting that Lewinson's drug use terminated on May 5, 1989).

In support of its position, the government cites *United States v. Borrayo*, 898 F.2d 91 (9th Cir.1989). In that case, the court noted in dictum [1] that § 5K2.13's exemption for intoxicant-induced diminished capacity bars departure where a defendant's diminished capacity was only partly the result of alcohol use. *Id.* at 94. In response, Lewinson distinguishes *Borrayo* and cites an out-of-circuit case that sanctions departure under § 5K2.13 where drug addiction and mental illness are distinct but interrelated causes of a defendant's criminal behavior. *See United States v. Speight*, 726 F.Supp. 861, 868 (D.D.C.1989).

We need not resolve in this case whether departure is barred by drug use that is concurrent with, but to some extent distinct from, a mental impairment. Here, the district court apparently relied on the fact that Lewinson was drug free during the latter half of the criminal "scheme" but apparently still suffered from diminished capacity during this period. On these facts, the drug-use exemption did not bar the court from departing downward to "reflect the extent to which reduced mental capacity [that is not the result of drug use] contributed to the commission of the offense." § 5K2.13.

B. Did the district court err in granting a four-level downward departure?

■ " 'We review for an abuse of discretion whether ... the extent of departure was unreasonable.' " *Fairless*, 975 F.2d at 666 (quoting *Takai*, 941 F.2d at 742). *See also Lira–Barraza*, 941 F.2d at 747. "Reversal is required only if the choice is 'unreasonable' in light of the standards and policies incorporated in the Act and the Guidelines." *Lira Barraza*, 941 F.2d at 751.

As Lewinson notes, the four level departure in this case is well within line with other adjustments established by the guidelines for various mitigating factors indicating diminished culpability. *See, e.g.,* § 3B1.2 (four-level downward adjustment for minimal participation); § 2X3.1 (base level offense for "accessory after the fact" set at six levels lower than underlying offense level). In light of these standards, we cannot say the district court's down-

---

1. The court decided that case on the ground that § 5K2.13 was inapplicable to Borrayo's "crime of violence."

ward departure of four offense levels is "unreasonable."

AFFIRMED.