## UNITED STATES of America, Plaintiff–Appellee,

v.

## Jose Garza CANTU, Defendant–Appellant.

### No. 92–30211.

United States Court of Appeals, Ninth Circuit.

Submitted March 5, 1993.[*]

Decided Dec. 27, 1993.

---

6. H.R.S. § 388–6(6) applies to all employers except government employers, as indicated by H.R.S. § 388–1.

* The panel unanimously finds this case suitable for submission on the record and briefs without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

Thomas E. Cooney, Spokane, WA, for defendant-appellant.

Rolf H. Tangvald, Asst. U.S. Atty., Spokane, WA, for plaintiff-appellee.

Before: CANBY, and REINHARDT, Circuit Judges, and TASHIMA, District Judge.**

REINHARDT, Circuit Judge:

The Sentencing Guidelines permit a district court to depart downward if a defendant suffers from significantly reduced mental capacity that contributed to the commission of his or her offense. United States Sentencing Commission, *Guidelines Manual*, § 5K2.13 p.s. (Nov. 1991) ("U.S.S.G. § 5K2.13," "§ 5K2.13"). The issue before us is whether the district court has the authority to depart downward pursuant to that guidelines provision where a defendant suffers from post-traumatic stress disorder. We hold that it does, vacate Cantu's sentence, and remand.

## BACKGROUND

After a dispute in a bar, Jose Garza Cantu, a Vietnam veteran, was questioned by police and searched. The search revealed a loaded .22 caliber pistol tucked in his waistband. Cantu pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g), 924(a).

Before sentencing, Cantu presented the court with a report written by Dr. Paul Wert, a clinical psychologist. The report stated that Cantu served as an infantry rifleman in the Marine Corps from 1966 to 1969, spending more than two years of that period in Vietnam. There, he "was involved in numerous firefights, search and destroy missions, three and four day reconnaissance patrols, and both day and night ambushes." At times, his unit was under heavy fire. He witnessed the death of civilians, including women and children. He also witnessed the death of his own men.

Dr. Wert's report stated that Cantu's combat experience left him with "severe and ongoing" post-traumatic stress disorder, a recognized psychiatric condition.[1] His symptoms include flashbacks to and "frequent and vivid" nightmares about his combat experiences, chronic insomnia, "considerable" anxiety, "intrusive thoughts [and] images," depression, rage, and "marked[ ]" paranoia. The report also stated that Cantu has a "fixation on and reliance on weapons for feelings of personal security and safety" that was "greatly enhanced or exacerbated by his Viet Nam experiences, and by his ongoing [post-traumatic stress disorder] as well."

Cantu's symptoms have persisted since his return from Vietnam. According to Dr. Wert's report, their frequency and intensity required that he be hospitalized for three-and-a-half months in 1990, twenty-one years after his return from Vietnam and one year before he committed the offense the sentence

** The Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

1. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 247–51 (3d ed. rev. 1987). *See also United States v. Johnson,* 979 F.2d 396, 401 (6th Cir.1992) (taking judicial notice of that manual).

for which he now appeals. Medical personnel apparently recommended a second hospitalization just months before he committed the offense. His symptoms were still intense at the time of his psychological evaluation, six months after the offense.

Cantu contended before the district court that Dr. Wert's report established that he suffered from "significantly reduced mental capacity" that contributed to the commission of his offense, and requested a downward departure pursuant to § 5K2.13, which provides:

> **Diminished Capacity (Policy Statement)**
>
> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13.

At Cantu's sentencing hearing, the court heard argument from both the defense and the prosecution concerning the propriety of § 5K2.13 as applied to Cantu. The court then told Cantu:

> I've considered the request for departure, a request, pursuant to the guidelines, particularly subsection or Section 5K2.13. Dealing with diminished capacity.
>
> . . . . .
>
> One of the important, important requirements is that there be a significantly reduced mental capacity. I have, again, as indicated, reviewed the report from Doctor Wert. And while it is clear from his report that you are suffering from post traumatic stress disorder and that you appear to have significant alcohol dependency and that you reflect some characteristics showing that your, the doctor would call it paranoid, to the extent of having a fixation with weapons.
>
> I can find nowhere in the report an indication that you are suffering from a significantly reduced mental capacity, as the law indicates as the basis for depar-

ture. Nor would the indication of involvement of alcohol reflect a basis for departure downward in this matter.

The court concluded that Cantu was not suffering from significantly reduced mental capacity and that, therefore, the law did not permit him to depart downward. Cantu appeals.

## DISCUSSION

### I. Jurisdiction

 As an initial matter, we must determine whether the district court's refusal to depart is reviewable. *See United States v. Belden*, 957 F.2d 671, 676 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992). We have jurisdiction to review a sentencing court's refusal to depart downward as long as the refusal rested on the court's conclusion that it possessed no discretion, and not on the belief that exercise of its discretion was unwarranted. *United States v. Robinson*, 958 F.2d 268, 272 (9th Cir.1992); *United States v. Garcia–Garcia*, 927 F.2d 489, 491 (9th Cir.1991). Here, the sentencing court clearly understood that it had the discretion to depart downward if it found that Cantu suffered from significantly reduced mental capacity. The court appears to have found that Cantu did not suffer from significantly reduced mental capacity, and to have concluded that it therefore possessed no discretion to depart downward on that basis. "Because the record supports an inference that the sentencing court's refusal to depart rested on the court's conviction that it lacked the discretion to do so, we will treat the refusal as a product of the court's interpretation of the guidelines, subject to appellate review." *United States v. Brown*, 985 F.2d 478, 481 (9th Cir.1993) (citations omitted).

### II. Departure Under § 5K2.13

#### A.

"We review de novo the district court's ruling that a particular circumstance does not constitute a permissible basis for departure." *United States v. Morales*, 972 F.2d 1007, 1010 (9th Cir.1992) (citing *United States v. Lira–Barraza*, 941 F.2d 745, 746

(9th Cir.1991) (en banc)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993). *See also United States v. Brown,* 985 F.2d at 481 (district court's determination that it lacks discretion to depart from the sentencing guidelines is reviewed de novo).

### B.

▮▮▮▮ Before turning to the requirements for departure established by the guideline, we consider the procedures that a request for a departure under the guideline may require. The sentencing court determines facts relevant to sentencing by a preponderance of the evidence, *United States v. Navarro,* 979 F.2d 786, 788 (9th Cir.1992) (citing *United States v. Restrepo,* 946 F.2d 654, 655–57 (9th Cir.1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992)), and a defendant bears the burden of proving the appropriateness of a downward departure, *United States v. Anders,* 956 F.2d 907, 911 (9th Cir.1992) (citing *United States v. Howard,* 894 F.2d 1085, 1089–90 (9th Cir. 1990)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1592, 123 L.Ed.2d 158 (1993). Under U.S.S.G. § 6A1.3(a), however, the district court must give the parties "an adequate opportunity" to present information regarding disputed facts, and the court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). Thus, it is unnecessary, for example, for a defendant who requests a departure under § 5K2.13 to undergo a mental health examination of the type used in determining guilt or innocence. *United States v. Adonis,* 744 F.Supp. 336, 339 n. 11 (D.D.C. 1990) (noting that such a requirement would turn the provision into a superfluity, since a defendant impaired enough to qualify would be incompetent to stand trial, or would be found innocent by virtue of his impairment).

▮▮▮▮ Beyond that general requirement, the guideline commentary permits the sentencing court to determine the appropriate procedure to resolve contested facts, but requires

the sentencing court to tailor its process to "the nature of the dispute, its relevance to the sentencing determination, and applicable case law." U.S.S.G. § 6A1.3 (commentary).

▮▮▮▮ Resolution of disputed facts concerning mental impairment requires more than simply a neutral process. The court's inquiry into the defendant's mental condition and the circumstances of the offense must be undertaken "with a view to lenity, as section 5K2.13 implicitly recommends." *United States v. Chatman,* 986 F.2d 1446, 1454 (D.C.Cir.1993). Lenity is appropriate because the purpose of § 5K2.13 is to treat with some compassion those in whom a reduced mental capacity has contributed to the commission of a crime.

### C.

Section 5K2.13 sets out five requirements for a departure. The defendant must have 1) committed a non-violent offense 2) while suffering from significantly reduced mental capacity 3) not caused by voluntary use of drugs or other intoxicants. 4) The reduced capacity must contribute to the commission of the offense, and 5) the defendant's criminal history must not indicate a need for incarceration to protect the public. We consider first the requirement that the defendant suffer from significantly reduced mental capacity.

### 1.

▮▮▮ Before turning to the body of our analysis, we note that, under U.S.S.G. § 5H1.3, "Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guideline range, except as provided in Chapter Five, Part K, Subpart 2 (Other Grounds for Departure)." We have construed this guideline to mean that "a defendant's mental and emotional condition is only relevant to a sentencing determination (1) in the extraordinary case and (2) as provided in Chapter Five," Part K, Subpart 2, of the guidelines. *United States v. Doering,* 909 F.2d 392, 394 (9th Cir.1990).[2] Section 5K2.13 is unques-

---

**2.** *Doering* considered a slightly different version

of § 5H1.3. The difference does not affect our

**1512** 

tionably covered by the latter category. There is no question, therefore, that § 5K2.13 is the proper policy statement under which to consider whether a mental ailment makes a defendant eligible for a downward departure at sentencing.

We emphasize that the question before us is not whether Cantu is mentally or emotionally disturbed. The district court found that Cantu does suffer from post-traumatic stress disorder, a recognized psychiatric condition.[3] In fact, his is a most serious disorder. The question is whether post-traumatic stress disorder, an *emotional* illness, may cause reduced *mental* capacity for the purpose of the guideline.[4]

 In everyday language, "reduced mental capacity" refers to a lack of full intellectual functioning. It connotes an impairment of the intellect, a failure to be able quickly or fully to grasp ordinary concepts. We have treated § 5K2.13 as applying to emotional conditions as well. *United States v. Doering*, 909 F.2d at 394 (finding that "a defendant's mental *and emotional* condition is ... relevant to a sentencing determination.... under section 5K2.13's diminished capacity exception") (emphasis added). We reaffirmed that view in *United States v. Lewinson*, 988 F.2d 1005, 1006–07 (9th Cir.1993), endorsing the application of the guideline to a defendant who suffered from "psychological problems." Other courts have applied the guideline to defendants suffering from schizoaffective disorder, *United States v. Ruklick*, 919 F.2d 95, 97 (8th Cir.1990), bipolar disorder (i.e. manic-depressive disorder), *United States v. McMurray*, 833 F.Supp. 1454, 1480–84 (D.Neb.1993), and schizophreniform disorder, *United States v. Speight*, 726 F.Supp. 861, 867 (D.D.C.1989). Such applications are appropriate. To artificially distinguish organic syndromes (mental defects) from emotional disorders is to ignore the increasingly blurry line between them. Robert Michels, M.D., Peter M. Marzuk,

M.D., *Progress in Psychiatry, New Eng. J.Med.* 552, 628 (1993) (surveying more than 300 scientific papers, including those pertaining to post-traumatic stress disorder, and concluding that "[t]he biologic basis of psychiatry is more firmly established than ever before").

Treating emotional illnesses in the same way that we do mental abnormalities furthers the purpose of § 5K2.13. The goal of the guideline is lenity toward defendants whose ability to make reasoned decisions is impaired. Emotional conditions, like mental impairments, may distort or suppress the formation of reasoned decisions. The focus of the guideline provision is reduced mental *capacity*, not the cause—organic, behavioral, or both—of the reduction.

Moreover, our application of the guideline to emotional illnesses is consistent with the usage of the American Psychiatric Association's standard text, *Diagnostic and Statistical Manual of Mental Disorders*. That manual classifies what in common language are *emotional* disabilities as "mental disorders." It does not separately list or discuss emotional ailments, or distinguish them from mental abnormalities in any way. Rather, it states:

[I]t is useful to present a definition of mental disorder that has influenced the decision to include certain conditions in [the manual] as mental disorders and to exclude others.

In [the manual] each of the mental disorders is conceptualized as a clinically significant *behavioral or psychological syndrome* or pattern that occurs in a person and that is associated with present distress (a painful symptom) or disability (impairment in one or more important areas of functioning).... Whatever its original cause, it must currently be considered a manifestation of a *behavioral, psychological, or biological dysfunction* in the person....

*Id.* at xxii (emphasis added). Consistent with this definition, the manual classifies as

reasoning or disposition.

**3.** *See supra* note 1. The government does not dispute that post-traumatic stress disorder is an emotional disease: "Sadly, many persons suffer from the effects of [post-traumatic stress disor-

der] and the symptoms that accompany it." Government's Brief at 10.

**4.** Only if post-traumatic stress disorder causes reduced mental capacity may we determine whether the reduction is "significant."

"mental disorders" not only mental retardation, *id.* at 28–37, a condition we ordinarily consider as affecting mental capacity, but also schizophrenia and mood disorders, *id.* at 187–98, 213–33, conditions that the lay person would consider emotional illnesses.

 "Reduced mental capacity," then, comprehends both organic dysfunction and behavioral disturbances that impair the formation of reasoned judgments. Both make a defendant eligible for a departure under § 5K2.13. Therefore, a defendant suffering from post-traumatic stress disorder, an emotional illness, is eligible for such a departure if his ailment distorted his reasoning and interfered with his ability to make considered decisions.[5]

### 2.

 We have recently held that a defendant may be eligible for a departure under § 5K2.13 no matter what the nature or severity of his underlying condition. *United States v. Lewinson,* 988 F.2d at 1006. The guideline provision requires *only* that the defendant suffer from a significantly reduced mental *capacity*. It concerns the *effect* of the impairment on the defendant, not the characteristics or the seriousness of the impairment itself.

 Cantu's post-traumatic stress disorder is a grave affliction. Its effect on his mental processes is undisputed. He has flashbacks to scenes of combat. He suffers nightmares, "intrusive thoughts[,] and intrusive images." He is anxious, depressed, full of rage, "markedly paranoid," and "explosive at times." Dr. Wert's report demonstrates unequivocally that Cantu's condition impaired his emotional functioning to a significant extent, even causing him to be hospitalized for treatment for three and a half months in the year before his offense. More important, the report shows that Cantu's condition interfered substantially with his ability to make reasoned decisions, causing him to fixate on weapons and rely on them for feelings of personal safety and security.

Cantu's impairment is more than sufficient to make him eligible for a reduction in sentence under § 5K2.13.

### D.

We now consider the additional requirements imposed by § 5K2.13 and their relationship to Cantu's eligibility for a downward departure.

### 1.

 Section 5K2.13 requires that the district court find that Cantu's offense, possession of a firearm by a felon, is non-violent. We have defined "non-violent" as the converse of a "crime of violence" under U.S.S.G. § 4B1.2(1)(i), one of the career offender guidelines: that is, a non-violent offense is one that does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(1)(i); *United States v. Borrayo,* 898 F.2d 91, 94 (9th Cir.1989).

The application note to § 4B1.2(1)(i) states, "The term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." U.S.S.G. § 4B1.2, Note 2 (November 1, 1991). That provision bolstered our conclusion in *United States v. Sahakian,* 965 F.2d 740, 741–43 (9th Cir. 1992), that being a felon in possession is not a crime of violence for the purpose of applying the career offender guidelines. We have since extended *Sahakian* to sentences imposed under the Armed Career Criminal Act, 18 U.S.C. § 924(e), *United States v. Garcia–Cruz,* 978 F.2d 537, 543 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2453, 124 L.Ed.2d 669 (1993), and to the application of 18 U.S.C. § 924(c), which criminalizes the use of a firearm during a crime of violence, *United States v. Canon,* 993 F.2d 1439, 1441–42 (9th Cir.1993). Our reasoning was the same in all of those cases: that the status of being a felon in possession "does not have as an element the actual, attempted or threatened use of violence[,] nor does the actual

---

**5.** Although post-traumatic stress disorder is a recognized psychiatric illness, the plain language of § 5K2.13 does not require that a defendant's condition appear, as Cantu's does, in the Ameri-

can Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders,* or even that the defendant suffer from a recognized mental or emotional disease.

conduct it charges involve a serious potential risk of physical injury to another." *Sahakian,* 965 F.2d at 742.

■ That reasoning is equally persuasive here. We therefore hold that possession of a firearm by a felon is not a crime of violence for the purpose of a departure under § 5K2.13.[6] On remand, Cantu may not be found to have committed a crime of violence; thus, he may not be declared ineligible for departure on that ground.

### 2.

■ Section 5K2.13 places only one limitation on the cause of the defendant's reduced capacity: the impairment may not have been caused by voluntary use of drugs or other intoxicants. *United States v. Lewinson,* 988 F.2d at 1006. That limitation comports with U.S.S.G. § 5H1.4, which states, "Drug or alcohol dependence or abuse is not a reason for imposing a sentence below the guidelines. Substance abuse is highly correlated to an increased propensity to commit crime." U.S.S.G. § 5H1.4. *See United States v. Page,* 922 F.2d 534 (9th Cir.1991) (holding that § 5H1.4 bars a sentencing court from departing downward on the ground of the defendant's extreme alcoholism).

According to Dr. Wert's report, Cantu is an alcoholic, and post-traumatic stress disorder may be the cause of his alcoholism. There is, however, no evidence in the record that suggests that Cantu was drunk at the time of his offense. As a result, the sentencing court made no finding regarding Cantu's alcoholism or the causal link, if any, between Cantu's alcoholism and either his post-traumatic stress disorder or his offense.[7] Nevertheless, the evidence submitted by Cantu is uncontroverted, and the record is clear. Alcoholism is not the cause of Cantu's problem; indeed, it may be one of the products of that problem.

■ The government urges us to find Cantu ineligible for a departure under § 5K2.13 on the ground that, as noted above, alcohol use is not a permissible ground for departure under U.S.S.G. § 5H1.4. The government's contention implies that any alcohol use makes a defendant ineligible for a departure under § 5K2.13, no matter what its relationship to the defendant's reduced mental capacity or the commission of the crime. That is not so. Alcoholics and other drug abusers are not categorically disqualified from this departure. Under the plain language of the guideline, they are disqualified only if their *voluntary alcohol or drug use caused their reduced mental capacity.* U.S.S.G. § 5K2.13. *See United States v. Lewinson,* 988 F.2d at 1006 (adhering to the plain language of the guideline). If the reduced mental capacity was caused by another factor, or if it, in turn, causes the defendant to use alcohol or another drug, the defendant is eligible for the departure.

■ Moreover, a defendant whose reduced capacity was caused *in part* by voluntary drug or alcohol use is not disqualified from departure. It is not always possible to determine with certainty the cause of a mental or emotional ailment, and such illnesses do not often have a sole cause. To permit a defendant whose reduced capacity was caused in part by voluntary drug or alcohol use to receive a downward departure is to adhere, as *Lewinson* implicitly orders, to the plain language of § 5K2.13. The guideline states only that a defendant may be eligible for a departure if he committed his offense "while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants." It does not restrict the departure to defendants whose reduced mental capacity is entirely unrelated to their voluntary drug or alcohol use. Thus, a defendant whose "drug use . . .

---

6. Until November 1, 1991, the application note to § 4B1.2(1)(i) did not exclude the offense of being a felon in possession from the definition of "crime of violence." *United States Sentencing Commission, Appendix C,* Amendment 433 (effective Nov. 1, 1991) (amending the application note to exclude that offense). Before that time, we held that being a felon in possession consti-

tuted a crime of violence that disqualified a defendant from a departure under § 5K2.13. *See United States v. Doering,* 909 F.2d at 394.

7. Cantu's alcoholism no doubt explains the district court's reference to "the indication of involvement of alcohol."

is concurrent with, but to some extent distinct from" his reduced mental capacity, *United States v. Lewinson,* 988 F.2d at 1007, may not be disqualified from a departure.[8]

Here, the uncontroverted evidence showed that Cantu's condition was caused by his experiences as a combat Marine in Vietnam. Accordingly, Cantu is not subject to disqualification from the departure for drug or alcohol use.

### 3.

 Section 5K2.13 requires that the offender's significantly reduced mental capacity have contributed to the commission of the crime. Although the issue has never arisen in our circuit, other circuits are unanimous in holding that the disorder need be only a contributing cause, not a but-for cause or a sole cause, of the offense. *United States v. Soliman,* 954 F.2d 1012, 1014 (5th Cir. 1992); *United States v. Lauzon,* 938 F.2d 326, 331 (1st Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 450, 116 L.Ed.2d 468 (1991); *United States v. Ruklick,* 919 F.2d at 97–98. *See also 'United States v. Speight,* 726 F.Supp. at 868 (same); *cf. United States v. Cheape,* 889 F.2d 477, 480 (3d Cir.1989) (holding that the guidelines do not intend that a downward departure be warranted only if coercion is a *complete* defense). *See also United States v. Frazier,* 979 F.2d 1227, 1229–30 (7th Cir.1992); *United States v. Johnson,* 979 F.2d at 401; *United States v. Perkins,* 963 F.2d 1523, 1526 (D.C.Cir.1992) (all finding that § 5K2.13 requires that the mental condition contribute to the offense, but not discussing the necessary degree of contribution). We adopt this commonsense holding. The language of the guideline provision permits a sentencing court to depart "to reflect the extent to which reduced mental capacity contributed to the commission of the offense." § 5K2.13. That is, it requires only that the district court find *some* degree, not a *particular* degree, of causation. Our holding merely reaffirms that language. Thus, the degree to which the impairment

contributed to the commission of the offense does not constitute the degree to which the defendant *is eligible for* the departure. The defendant's eligibility remains the same whether his impairment contributed greatly to the commission of his offense, or hardly at all. Rather, the degree to which the impairment contributed to the commission of the offense constitutes the degree to which the defendant's *punishment should be reduced.*

Cantu pled guilty to being a felon in possession of a firearm. While the district court did not explicitly find that his post-traumatic stress disorder contributed to his offense, the court did state that "it is clear" that Cantu "reflect[s] some characteristics showing that [he is], the doctor would call it paranoid, to the extent of having a fixation with weapons." The question is thus whether Cantu's post-traumatic stress disorder caused his paranoia, and whether Cantu's fixation on weapons contributed to his offense. Dr. Wert's uncontroverted report states that paranoia is "not uncommonly found in severe [post-traumatic stress disorder]." It also stated that Cantu's post-traumatic stress disorder left him with a fixation on weapons and a reliance on them for feelings of personal safety and security. It is clear, therefore, that there was a direct causal relationship between Cantu's disorder and his offense. On remand, if the court finds Cantu otherwise eligible for the departure, it may depart to the extent that it finds that Cantu's post-traumatic stress disorder contributed to the commission of the offense.

### 4.

The final requirement of the guideline is that the defendant's criminal history must not demonstrate a need for incarceration to protect the public. The government contends that Cantu's criminal record bars a departure under § 5K2.13. Cantu has one conviction for carrying a concealed weapon, one conviction for an unspecified weapons violation, and four convictions for differing

---

**8.** We have hinted in dictum that reduced mental capacity caused in part by alcohol or drug use disqualifies a defendant from the departure. *United States v. Borrayo,* 898 F.2d at 94. However, we believe that the structure of § 5K2.13, and

our decision in *Lewinson* to adhere to the plain meaning of that provision, dictate the conclusion that reduced mental capacity that is partly caused by voluntary alcohol or other drug abuse leaves a defendant eligible for the departure.

degrees of assault. In addition, his pre-sentence report states, "Most of his arrests have involved assaults on other people in which he quite often was carrying a firearm or knife which ended up being involved in the altercation." Before sentencing, Cantu filed an objection to the pre-sentence report. He contends that the report lists one assault conviction twice, that the only fourth-degree assault conviction was the result of a domestic dispute in which he neither used a weapon nor inflicted an injury, and that there is no basis for the statement concerning his habit of carrying a knife or a gun. The district court did not resolve these disputes because they were not germane to sentencing once the court concluded that Cantu was ineligible for a departure under § 5K2.13.

"[T]wo of the primary rationales for punishing an individual by incarceration—desert and deterrence—lose some of their relevance when applied to those with reduced mental capacity." *United States v. Chatman*, 986 F.2d at 1452 (citing *United States v. Poff*, 926 F.2d 588, 595 (7th Cir.1991) (en banc) (Easterbrook, J., dissenting), *cert. denied,* — U.S. ——, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991)). Desert (blameworthiness) loses some bite because those with reduced ability to reason, or to control their impulses, are less deserving of punishment than those who act out of viciousness or greed. *Id.* Deterrence has less value as a rationale for punishment because people with reduced capacities are less susceptible to a system of punishment and reward: the grip of their disorders may make them less able both to identify and to conform their actions to an appropriate course of conduct. *Id.* Incapacitation alone retains its full force against such offenders. They are as capable of inflicting harm as those who are not disabled, and their mental conditions may make them less susceptible to deterrence.

▮▮▮ When defendants with reduced mental capacity do not exhibit violent conduct, however, incapacitation is not such an important goal. Read as a whole, the guideline

states that "when incapacitation is not an important justification for punishment, [a] mental condition may be the basis of a departure." *United States v. Poff,* 926 F.2d at 595 (Easterbrook, J., dissenting). In essence, the guideline asks a sentencing court to determine whether public safety requires that the defendant be sentenced to the same term that would be imposed if his mental capacity were *not* significantly reduced.[9] The purpose of this departure is lenity, not harshness, toward those who are mentally or emotionally disabled. A sentencing court may not presume that a defendant with reduced mental capacity is more dangerous than other offenders, or that, if such a defendant has a criminal record, he is more likely than those who are not impaired to commit future crimes. The court's decision must be precise and fact-specific, and must take into account any treatment the defendant is receiving or will receive while under sentence, the likelihood that such treatment will prevent the defendant from committing further crimes, the defendant's likely circumstances upon release from custody or its alternatives, the defendant's overall record, and the nature and circumstances of the offense that brings the defendant before the sentencing court. *See United States v. Speight,* 726 F.Supp. at 868–69 (finding a defendant eligible for departure who was receiving treatment for his schizophreniform disorder and whose age at the end of his statutory minimum term of imprisonment made him unlikely to pose a risk to the public).

Because conflicting evidence exists regarding the possibility that Cantu's incarceration is required to protect the public, we remand on this issue.

### CONCLUSION

Because the district court erred in ruling that it lacked discretion to award Cantu a departure under § 5K2.13, we vacate Cantu's sentence and remand his case. *United States v. Brown,* 985 F.2d at 483. Cantu's

---

9. We emphasize that the court's decision is not limited to *either* imposing the same term of incarceration that would be warranted if the defendant were not mentally ill, *or* imposing no term of incarceration at all. In most cases, a down-ward departure under § 5K2.13 will result in a *lesser* period of incarceration than would be warranted without the departure, not in *no* period of incarceration.

post-traumatic stress disorder constitutes significantly reduced mental capacity for the purpose of § 5K2.13. Furthermore, his disorder contributed to the commission of his offense, and his offense was neither violent nor caused by voluntary drug or alcohol use. If the court finds that Cantu's criminal record does not require that he be incarcerated to protect the public, or that a lesser period of incarceration consistent with a downward departure would suffice to protect the public, it may in the exercise of its discretion grant Cantu a downward departure under § 5K2.13. The court should act in the awareness that "[t]he criminal justice system long has meted out lower sentences to persons who, although not technically insane, are not in full command of their actions." *United States v. Poff*, 926 F.2d at 595 (Easterbrook, J., dissenting). The mandate shall issue immediately.

**VACATED AND REMANDED.**

CANBY, Circuit Judge, concurring:

I agree with the majority that this case must be remanded for resentencing, but my grounds for decision are more limited than those of the majority opinion.

At sentencing, the district court said to Cantu that "while it is clear [ ] that you are suffering from post traumatic stress disorder ... I can find nowhere in the report an indication that you are suffering from a significantly reduced mental capacity." This comment indicates, I believe, that the sentencing judge believed that post-traumatic stress disorder, of itself, *cannot* constitute or rise to the level of a significantly reduced mental capacity. I agree with the majority that this proposition is erroneous as a matter of law, for reasons well stated by Judge Reinhardt in Section C.1 of his majority opinion; I therefore concur in that part of his opinion.

Because the district court appears to have made the decision not to depart downward under the mistaken view that post-traumatic stress disorder could not qualify as "significantly reduced mental capacity" under Guideline § 5K2.13, we must vacate and remand for resentencing. *See United States v. Brown*, 985 F.2d 478, 483 (9th Cir.1993) (sentencing court's error in ruling that it lacked discretion to depart downward requires remand for resentencing).

Beyond that, I would not go. The district court made no factual determination whether Cantu's post-traumatic stress disorder contributed to the commission of his offense, and I would leave that determination to the district court. Even more clearly, the district court never reached the questions whether Cantu's crime was non-violent, whether it was caused by voluntary use of drugs or other intoxicants, and whether Cantu's criminal history indicates a need for his incarceration to protect the public. I would neither rule nor expound on these questions before the district court has addressed them.