52 F.3d 335
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clyde A. CHARLES, Defendant-Appellant.
 No. 94-30252.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 13, 1995.*
Decided April 18, 1995.
 
 Before: POOLE, BOOCHEVER, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Clyde A. Charles appeals his 100-month sentence imposed following remand from this Court for resentencing. Charles was originally sentenced to 115 months, following a jury trial for being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1). Charles contends that the district court erred by refusing to depart downward from the applicable Guidelines range based upon either his significantly reduced mental capacity to commit the offense or the atypical nature of the offense. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * A district court's discretionary decision to depart downward from the Guidelines is generally not reviewable on appeal. United States v. Eaton, 31 F.3d 789, 792 (9th Cir.1994); United States v. Morales, 898 F.2d 99, 103 (9th Cir.1990). We may, however, review de novo a court's refusal to depart downward if the court concluded that it lacked the authority to do so. Eaton, 31 F.3d at 793; see also United States v. Cantu, 12 F.3d 1506, 1510 (9th Cir.1993). We review for clear error the court's factual findings underlying the sentencing determination. United States v. Lewinson, 988 F.2d 1005, 1006 (9th Cir.1993). Under this standard, we must accept the court's factual findings " 'unless we have a definite and firm conviction that a mistake has been committed.' " Id. (quoting United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991)).
 
 
 4
 The Guidelines allow the district court to depart downward if the defendant suffers from a significantly reduced mental capacity which contributed to the commission of his offense, U.S.S.G. Sec. 5K2.13; Cantu, 12 F.3d at 1511 (listing five requirements for departure under section 5K2.13), or the defendant's conduct is atypical or differs from the "heartland" of cases, U.S.S.G. Ch. 1, Pt. A., intro. 4(b); Eaton, 31 F.3d at 793.
 
 II
 A. The Offense
 
 5
 Here, Charles, an ex-felon, pawned a Winchester .30-.30 caliber rifle at a pawn shop in Fairbanks, Alaska for $150. Charles handed the rifle to a employee behind the counter, produced his state identification card, and provided information for the pawn slip. The employee asked Charles if he had a prior felony conviction. Charles denied having a prior felony conviction and signed the pawn ticket.
 
 B. Resentencing
 
 6
 The district court held an exhaustive two-day resentencing hearing. Charles made numerous factual objections to the presentence report (PSR). The Government introduced the testimony of the probation officer responsible for preparation of the PSR and the investigating agent to rebut the objections. Following the testimonial evidence, the court resolved each factual objection, and repeatedly asked if the court had failed to address any objection.
 
 
 7
 To demonstrate his mental state, Charles introduced the testimony of his adoptive father (his natural mother's brother) and his maternal aunt. Charles' father testified that: his sister drank heavily during her pregnancy with Charles; Charles was born jaundiced; Charles had abnormal head growth resulting in hospitalization as an infant; and Charles had learning problems which led to poor judgment. Charles' aunt also testified about her sister's drinking during the pregnancy, and Charles' inability to think before acting.
 
 
 8
 Charles also introduced into evidence a psychological report prepared by Dr. Paul L. Craig. The report indicates that Charles had average knowledge of words, understanding of common social mores and norms, verbal abstract reasoning skills, borderline skills regarding fund of general information, fundamentally intact concentration skills, and difficulty recalling what he reads or hears. Dr. Craig further opined in the report that Charles
 
 
 9
 may not have had the capacity to remember and understand that possession of the rifle under these circumstances was not acceptable.... [I]t is thought that the patient suffered from at least some degree of diminished capacity to remember the information that he would need in order to exercise good judgment when he pawned the rifle.
 
 
 10
 ....
 
 
 11
 I do not think that he actually suffers from a fetal alcohol syndrome. However, fetal alcohol effect could contribute to the patient's verbal memory deficits. Irrespective of etiology, the verbal memory deficits ... could play a contributing role with regard to the diminished capacity to comport himself in a manner consistent with the letter of the law at the time he pawned his gun.
 
 
 12
 (ER at 86-87.)
 
 
 13
 Charles asked the court to depart downward from the applicable Guidelines based upon either his significantly reduced mental capacity to commit the offense, or the atypical nature of the offense. Regarding the latter ground for departure, Charles stated that he pawned an unloaded firearm solely to obtain money for his family. In denying a departure based on either ground, the court stated:
 
 
 14
 [T]here is insufficient evidence to satisfy this Court that the defendant was suffering from significantly reduced mental capacity.
 
 
 15
 The--Dr. Craig's report does address the defendant's mental problems. He concludes that based upon the tests that have been conducted, the deficiencies from which the defendant suffers. But the Court does not find them to be significantly reduced in order for the Court to find that there is diminished capacity.
 
 
 16
 ....
 
 
 17
 I also don't find that whatever his mental capacity was at the time--and I accept the findings by Dr. Craig and the description by him--that those in any way contributed to this violation. As both sides have indicated, this is a technical violation. It's an ex-felon in possession of a weapon. The Court does not find that there's any evidence in the record that would suggest that the defendant didn't realize that he was an ex-felon. As a matter of fact, the evidence is inconsistent with that theory, in that he denied being previously convicted of a felony at the time that he filled out the slip that was used to pawn the weapon. There is no other evidence in the record to suggest that he somehow just didn't remember that at the time he was in the pawnshop.
 
 
 18
 ....
 
 
 19
 There are some factors the defense suggested that the Court can use for purposes of determining that this [offense] is atypical. And I think that all those things do exist. The Court, however, will not use those to depart downward from the sentencing range, but will use those factors in deciding where within the range the sentence should be placed.
 
 
 20
 (RT 5/17/94 at 162-165.) The court then imposed a sentence at the low end of the Guidelines range.
 
 
 21
 Given the record before us, we cannot say the district court clearly erred by finding that Charles failed to present uncontroverted evidence that significantly reduced mental capacity contributed to his commission of the offense. See Lewinson, 988 F.2d at 1006-07; cf. Cantu, 12 F.3d at 1515. The court's remarks regarding the atypical nature of the offense were sufficient evidence of a discretionary decision not to depart. See Eaton, 31 F.3d at 793-94. This discretionary decision is not reviewable. See Morales, 898 F.2d at 103.
 
 
 22
 We have considered Charles' remaining arguments regarding his objections to the PSR, and reject them as meritless.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3