**UNITED STATES of America**

v.

**Mary Ann HERBERT.**

**No. 94 CR 526.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 30, 1995.

---

Alan R. Bruggeman, Kipnis, Kahn & Bruggeman, Ltd., New Lenox, IL, for defendant.

Joel David Bertocchi, United States Attorney's Office, Chicago, IL, for U.S.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

On October 12, 1994, defendant Mary Ann Herbert pled guilty to a two count information charging her with embezzlement and tax fraud in violation of 18 U.S.C. § 664 and 26 U.S.C. § 7203 respectively. This matter is before the court on defendant's motion for a downward departure. For the reasons stated below, the court grants defendant's motion.

### Background

Herbert owned and operated Berz Ambulance Service ("Berz") and James Medi–Car, Inc. ("Medi–Car"). In 1988, Medi–Car began experiencing financial difficulties. "[I]n order to salvage her failing company," defendant started gambling. (PSI at 1.) Howev-

er, the winnings did not cover the businesses debts.

In February of 1991, Herbert withdrew from the Medi–Car pension fund two certificates of deposit, valued at $70,000. She proceeded to cash the CD's, deposit the funds into the Berz account, transfer $65,000 from the Berz account to her personal account, and transfer $60,000 from the Berz account to the Medi–Car account. Afterwards, she used the Medi–Car account to pay personal debts. Herbert did not file a tax return for 1991, so her actions went undetected until some time last year.

In 1994, government agents contacted Herbert regarding the funds. She immediately agreed to cooperate, and eventually pled guilty. The probation officer calculated defendant's guideline range at 12–18 months based on a criminal history category of I and a total offense level of 13.[1]

### Analysis

Defendant has moved for a downward departure. Departure from the guideline range is permitted if the court "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by .. the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. The policy statement set forth in U.S.S.G. § 5K2.13 states that:

[i]f the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

In *United States v. Frazier*, 979 F.2d 1227 (7th Cir.1992), the Seventh Circuit explained that the critical inquiry under Section 5K2.13 is whether the psychological problems im-

---

1. This court previously held that the probation officer had correctly awarded Herbert a two-point deduction for acceptance of responsibility under U.S.S.G. § 3E1.1. (*See* Minute Order dated May 31, 1995.)

paired the defendant's judgment *at the time of the offense. Id.* For example, the defendant in *Frazier* suffered from "dysthymic disorder" which caused a "depressed mood" as well as "feelings of sadness, worthlessness, crying, and recurrent thoughts of suicide." The district court assumed that this disorder had affected Frazier's criminal conduct and departed downwards. On review, the Seventh Circuit suggested that this type of disorder could satisfy the "diminished mental capacity" requirement of Section 5K2.13. However, it remanded the case because the district judge had made no inquiry into whether the defendant suffered from diminished mental capacity at the time of the offense.

■ Previously, this court noted that Herbert's initial psychiatric examination indicated that she suffered from longstanding mental and emotional problems. Specifically, a psychiatrist who examined Herbert concluded that she suffers "an ongoing psychiatric illness ... [and] displays a number of features which are often seen in individuals with mixed personality states that include narcissistic, histrionic and borderline features." (Isaac Ray Rep. dated May 3, 1995 at 6.) The psychiatrist explained that the illness causes a depressed state prompting Herbert to question her own worth, make poor decisions, and then offer excuses to compensate for her shortcomings. (*Id.*)

This court ordered a second psychiatric evaluation to determine whether Herbert's psychological difficulties contributed to her criminal actions. By agreement of the parties, Herbert was seen by the same psychiatrist that had conducted the earlier analysis. The psychiatrist concluded that the defendant had, in fact, been impaired at the time of the offense. Specifically, she stated:

> In my opinion, Ms. Herbert suffered cognitive difficulties (poor concept formation and poor ability to understand or judge situations) and emotionally driven decision making. Her behaviors and thought patterns were influenced by her impaired mental condition which include a severe depressive disorder compounded by a pathological gambling disorder and alcohol dependence. The consequences of her

> personality disorder which included her feelings of inadequacy (which impacted upon her ability to lead or administer a corporation) resulted in extremely poor decision-making which consequently led to the charge against her. Her inability to cope with the sequence of events resulted in her suicide attempt.

> Ms. Herbert's mental state at the time of the offense was extremely impaired. As a direct result of an active depressive illness compounded by her mix personality state, her perception of her faults and weaknesses, in addition to her limited coping capacity and poor judgement subsequently resulted in a reduced mental capacity during the period of time immediately preceding, during, and after the offense.

(Isaac Ray Rep. dated Aug. 10, 1995 at 2–3.) This diagnosis of Herbert is similar to the diagnosis of the defendant in *United States v. Lewinson,* 988 F.2d 1005 (9th Cir.1993). In that case, the psychiatrist reported that defendant's psychological problems were the "most highly significant factors in [her] behavior and decision-making during the offense period" and that her "conduct at the time of the offense was directly related to psychological problems." *Id.* at 1006–07. The district court departed downwards and the appellate court affirmed. *Id.* at 1007–08. This court is persuaded that Herbert's psychiatric disorders contributed to her commission of the charged offense, warranting a downward departure.

The prosecution objects that Section 5K2.13 does not apply to Herbert's particular mental impairment. (Gov't Obj. to Amended Mtn. for Departure at 2.) According to the government, a downward departure is allowed only for psychiatric problems that impair an individual's "ability to take in and process information, as opposed to ... ability to act properly based on that information." (*Id.* at 2.) This argument is based largely on a passage from *Frazier* in which the Seventh Circuit noted that, although defendant had a history of depression, at the time of sentencing her:

> thinking was neither loose nor tangential as she could logically and coherently respond to questions. While no formal intel-

lectual testing was done, she appeared to be functioning in at least the Normal Range of Intelligence ... [She] was alert, fully oriented, and cooperative ... her thought process was rational and well organized. No gross cognitive effects were observed.

*Id.* The government reads this language as suggesting that only cognitive impairments qualify as "reduced mental capacity"—leaving Herbert's depression, mixed personality and poor judgment beyond the reach of the rule. The government has read this passage out of context.

*Frazier* stands for the much narrower proposition that a court may not apply Section 5K2.13 simply because a defendant has a history of mental impairment. By pointing out that Frazier's cognitive abilities were normal at the time of sentencing, the appellate court did not intend to limit the types of disorders encompassed by the rule. Rather, the court was merely emphasizing the point that a court cannot assume the actions of an individual with psychiatric problems always stem from the disorder. On the contrary, individuals like Frazier and Herbert may have periods in which they function normally. Before departing from the Guidelines, a court must ensure that the offense occurred during a period of mental impairment and that the conduct was actually the product of reduced mental capacity. By requiring a causal link between the reduced mental state and the commission of the offense, this circuit has reserved Section 5K2.13 for those defendants who are less culpable because their actions were rooted in their psychiatric problems.

■ Moreover, nothing in the Guidelines supports the distinction advanced by the government. The only qualification the Sentencing Commission placed on the type of "reduced mental capacity" contemplated by Section 5K2.13 is that the impairment not have resulted from "voluntary use of drugs or other intoxicants." U.S.S.G. § 5K2.13.

*See also Lewinson,* 988 F.2d at 1006 (rejecting argument that mental disease must affect defendant's ability to perceive reality).[2] In sum, all that *Frazier* and Section 5K2.13 require is that (1) the defendant suffered a diminished mental capacity at the time of the offense, and (2) the mental impairment contributed to the commission of the crime. *See Frazier,* 979 F.2d at 1230 (citing *United States v. Gentry,* 925 F.2d 186, 189 (7th Cir.1991)). In this case, there is strong evidence that Herbert committed these acts because of her longstanding mental illness. Moreover, there is even evidence that Herbert's difficulties affected her cognitive functions making it difficult for her to understand and judge situations. (Isaac Ray Rep. dated Aug. 10, 1995 at 2.) For these reasons, the court believes a downward departure is warranted.

### Conclusion

Defendant's Motion for Departure from the Sentencing Guidelines and Amended Motion for Departure from the Sentencing Guideline[s] are granted. The Government's Objection to Defendant's Amended Motion for Departure is denied.

---

2. The government does not contend that Herbert's problems stemmed primarily from her use of alcohol—nor would the facts support such an argument. (*See* Isaac Ray Rep. dated May 3, 1995 at 6.) In any event, alcohol use does not disqualify defendant for departure if reduced mental capacity can be attributed to some factor other than alcohol. *United States v. Cantu,* 12 F.3d 1506, 1515 (9th Cir.1993).