UNITED STATES of America, Plaintiff,

v.

Lloyd ROYAL, Defendant.

Cr. No. 95–420 (GK).

United States District Court, District of Columbia.

Oct. 24, 1995.

Kenneth Whitted, U.S. Attorney's Office, Washington, DC, for plaintiff.

Reita Pendry, Federal Public Defender Service, Washington, DC, for defendant.

### MEMORANDUM–ORDER

KESSLER, District Judge.

I. *Introduction*

The Defendant, Lloyd Royal, Jr., was convicted on April 7, 1995, following a jury trial, of two counts of interstate transportation of stolen property in violation of 18 U.S.C., Section 2314. He is before the Court for sentencing.

The property stolen by the Defendant consisted of books which were part of the Sterling Brown collection and which were donated to Howard University. Sterling Allen Brown was an author and part of the "Harlem Renaissance" during the 1920's and early 1930's. For approximately forty years until his retirement in 1969, Sterling Brown was also a Professor of Literature at Howard University, where he specialized in American and Afro–American literature. Prior to Sterling Brown's death in 1989, Sterling Brown and his family arranged for his collection of over 10,000 books to be entrusted to Howard

University. Though Howard University has maintained supervision over this collection, the collection was willed to Sterling Brown's son, who remains the rightful owner of the collection. Howard University claimed that approximately 1,641 books were taken from the Sterling Brown collection. Approximately $115,645.00 worth of books are still missing from the collection, Mr. Royal returned approximately $75,250.00 worth of books.

Lloyd Royal has no previous criminal history. It is undisputed that this crime, of which he has been convicted, is an aberration in a life that has otherwise been criminally untarnished, In fact, Mr. Royal has led an exemplary life: he received both undergraduate and graduate honors as a student at Howard University; he was a student member of the Howard Board of Trustees; and he served ten years in the military leaving with an honorable discharge.

II. *Analysis*

Under the U.S. Sentencing Guidelines, the basic offense level for this crime is 4; the fact that the loss exceeded $120,000.00 increases it by 9 levels; the fact that the offense involved more than minimal planning increases it by 2 levels; and the fact that the Defendant has denied any criminal participation in the instant offense excludes any reduction of two levels for acceptance of responsibility, and results in a final offense level of 15. The Defendant's Criminal History Category is I. Hence, the guideline range requires imprisonment of 18 to 24 months. Under U.S.S.G. Section 5B1.1, Application Note 2, Mr. Royal is ineligible for probation. Under U.S.S.G. Sections 5D1.1(a) and 5D1.2(b)(2), the Court is required to impose a term of supervised release of at least 2 but not more than 3 years. Under U.S.C.G. Section 5E1.2(c)(3), the fine range for this offense is $4,000.00 to $40,000.00.

In its Presentence Report, the United States Probation Office noted that U.S.S.G. Section 5K2.13 warrants a downward depar-

ture and recommended that "a sentence of imprisonment would serve no purpose (e.g., the defendant will not be deterred from further criminal behavior, because he does not believe that he has done anything wrong)." Presentence Report at 17.[1] Defendant, of course, agrees.

U.S.S.G. Section 5K2.13 provides that the guideline sentence may be departed from when the defendant suffers from diminished capacity.

If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.[2]

Mental capacity, for the purpose of the Sentencing Guidelines, "connotes an impairment of the intellect, a failure to be able quickly or fully to grasp ordinary concepts" and includes "both organic dysfunction and behavioral disturbances that impair the formation of reasoned judgments." *U.S. v. Cantu,* 12 F.3d 1506, 1512 (9th Cir.1993). The court noted that "other circuits are unanimous in holding that the disorder need be only a contributing cause, not a but-for cause or a sole cause, of the offense." *Id.* at 1515. Finally, relying on this Circuit's opinion in *U.S. v. Chatman,* 986 F.2d 1446, 1454 (D.C.Cir.1993), the *Cantu* court pointed out that the "inquiry into the defendant's mental condition and the circumstances of the offense must be undertaken 'with a view to lenity, as section 5K2.13 implicitly recommends.'" *Id.* at 1511.

There is a paucity of case law generally as well as in this Circuit with respect to the extent to which downward departures for

---

1. The Probation Office recommended 1) a sentence of probation with a special condition requiring the Defendant to participate in ongoing mental health treatment, including the use of medications if prescribed, 2) that no fine or restitution be ordered, and 3) that a $100.00 special assessment be ordered.

2. In granting such departures, the sentencing court must specify with precision its reasons. *U.S. v. Perkins,* 963 F.2d 1523, 1526 (D.C.Cir. 1992).

diminished capacity may be granted. However, our Circuit Court of Appeals recently recognized that Section 5K2.13 does provide a standard for evaluating diminished capacity departures: "A lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense." *U.S. v. Perkins,* 963 F.2d at 1527.

The government argues that this Court should refuse to depart downward to any "substantial" or "significant" degree because the Defendant cannot establish that his mental illness significantly caused him to steal the books and later sell some of those books for profit. While the government acknowledges Defendant's history of mental illness, it nonetheless contends that such illness contributed only minimally to the commission of these crimes and that his actions were primarily the result of his desire for profit. At most only a minimal downward departure may be appropriate under Section 5K2.13 of the Guidelines, in the Government's view.

Defendant argues that a downward departure is amply warranted in this case, given the nature of Defendant's mental illness, his full cooperation in this case, his otherwise unblemished record, and the very purpose of U.S.S.G. Section 5K2.13. Defendant argues vigorously that only impaired judgment and delusional thinking could have led him to believe there was nothing wrong with taking and selling the books from the Sterling Brown collection.

Defendant's impaired judgment and delusional thinking were well documented by both the expert mental health professionals relied on in this case: by a clinical psychologist, Dr. Marvin Podd (retained by defense counsel), and a psychiatrist, Dr. Raymond F. Patterson (retained by the government). Each performed extensive psychological evaluations of the Defendant. There is no question that the two lengthy evaluations demonstrate that Mr. Royal suffers from an impairment of the intellect and is unable to grasp ordinary concepts; that he suffers from severe psychological problems; and that his dysfunction impairs the formation of reasoned judgments.

Dr. Podd's findings were based upon psychological tests, clinical interviews with Mr. Royal, his mother and former wife, and the review of military records and medical records of previous psychiatric episodes. Dr. Podd concluded that Mr. Royal suffers from a "thought disorder of psychotic proportion," Report at 3, which "distort[s] his perception of the world, his thinking and his judgment." *Id.* at 5.

Dr. Podd found that Mr. Royal's "emotions strongly impact and reduce his ability to use logic in his decision-making and problem solving, thus impairing his judgment." *Id.* at 3. Psychological tests reveal that Mr. Royal suffers from subtle features of depression, that his thinking reveals significant cognitive slippage, that even in simple, clear circumstances he tends to see things differently than most people, and that the risk of delusional thinking is high. *Id.* at 4.

With respect to the crime for which Mr. Royal is to be sentenced, Dr. Podd concluded that "[h]is impaired judgment and delusional thinking had likely led him to believe there was nothing wrong with taking and selling the books. His diminished capacity most likely played a key role in his criminal activity." *Id.* at 5 Dr. Podd recommended that the Defendant "be treated with a combination of antipsychotic medication and intensive psychotherapy." *Id.* at 5.

Dr. Patterson's findings were based on his examination of Mr. Royal on August 16 and August 19, 1995. Dr. Patterson also concluded that Mr. Royal suffers from a mental illness, namely a "paranoid disorder," but found that such disorder "only minimally contributed to Mr. Royal's behavior involving the theft of books." Report at 6.

Dr. Patterson noted that Mr. Royal "present[s] with a history of paranoia that affects his social and occupational functioning," *Id.* at 6, and that, in those areas, "his judgment ... appears to be impaired.: *Id.* at 5.

Dr. Patterson also took into account several different episodes in Mr. Royal's life. In 1981, for example, medical records revealed that Mr. Royal was diagnosed as having "infantile reaction with paranoid feature." *Id.* at 2. In October, 1992, Mr. Royal was hospi-

talized in a psychiatric unit after he was seen running in front of cars and acting bizarrely. Shortly before that hospitalization, Mr. Royal related to Dr. Patterson that he spoke in tongues, subsequent to which he had to rel-earn English. Additional psychiatric history, according to the Defendant, includes Defendant's having seen a psychiatrist in 1987 and in 1979. *Id.* at 3.

Dr. Patterson concluded his report by noting that psychotherapy may be "very helpful" and that "medication may help him with the difficult adjustments of life." Report at 6. Because Mr. Royal has expressed fears about the use of medication, Dr. Patterson had concerns about the effectiveness of such treatment. Dr. Patterson did note, however, that if Mr. Royal is not to be incarcerated, "very strict supervision, particularly with regard to any recommended treatment, must be a part of his overall management." *Id.* at 7.

In sum, the doctors who have examined Mr. Royal both agree that he has suffered from long-term mental illness. In fact, Defendant suffered a psychotic break with reality for which he needs treatment as both doctors found, and that his mental illness impairs his judgment, ability to reason, and ability to function.

III. *Conclusion*

■ Section 5K2.13 of the Sentencing Guidelines sets out five requirements for granting a departure. The defendant must have 1) committed a non-violent offense, 2) while suffering from significantly reduced mental capacity, 3) not caused by voluntary use of drugs or other intoxicants. Fourth, the reduced capacity must contribute to the commission of the offense, and 5) the defendant's criminal history must not indicate a need for incarceration to protect the public. It is the conclusion of this Court that Mr. Royal has met all five conditions.

This Court accepts the findings of the two mental health professionals who evaluated Mr. Royal and the Probation Officer's recommendation. Mr. Royal clearly has a significantly reduced mental capacity and suffers from delusional thinking; each was causally related to this crime. It is worth emphasizing Dr. Podd's evaluation: Mr. Royal suffers from a "thought disorder of psychotic proportion" and his "diminished capacity most likely played a key role in his criminal activity." Dr. Podd's report 3 and 5. It is also worth restating Dr. Patterson's conclusion: Mr. Royal suffers from a "paranoid disorder." Dr. Patterson's Report at 6.

■ The real issue in this sentencing is whether Mr. Royal's reduced capacity contributed to the commission of the offense. Based on the findings of both Doctors Podd and Patterson, this Court concludes that the Defendant's mental illness made a substantial contribution to his commission of the offense. Indeed, given Mr. Royal's personal history, outstanding record at school, ten years of military service, and absence of any criminal history, it is difficult to reach any other conclusion.

■■ The government asks the Court to pinpoint or quantify the precise degree to which the mental illness contributed to the criminal activity, so as to facilitate computation of any departure from the Guidelines. That is a virtual impossibility, and there is no evidence in the record to support any such judgment. Neither of the doctors who evaluated Mr. Royal even attempted to pinpoint the percentage of Defendant's conduct attributable to his mental illness. The human psyche is not a neat piece of graph paper on which we can chart its emotions with great exactitude and precision. It is sufficient to determine that all of the findings, taken together, are detailed and persuasive in chronicling a severe mental disorder which played a significant role in the Defendant's commission of the crime. There is no question that the total absence of any criminal history and the non-violent nature of this offense demonstrate that incarceration is not needed to protect the public.

■ In short, the five requirements of Section 5K2.13 of the Sentencing Guidelines are satisfied in this case. Having established that Defendant is entitled to a departure, the next issue is the appropriate and reasonable extent of that departure. See *United States v. Jones,* 948 F.2d 732, 736 (D.C.Cir.1991).

The Court concludes that a downward departure of five offense levels is justified for the following reasons. First, this Circuit has already recognized that the purpose of Section 5K2.13 is to accord lenity when criminal activity is based, at least in part, on reduced mental capacity. *United States v. Chatman,* 986 F.2d at 1452. Second, the Ninth Circuit has already upheld a four-level downward departure based on a diminished capacity situation in a less sympathetic case where the defendant's reduced mental capacity was, in part, a product of his voluntary drug use. *United States v. Lewinson,* 988 F.2d 1005, 1007 (9th Cir.1993). Here, there is absolutely no suggestion of drug use. Third, to the extent that it is at all appropriate to consider percentages, the findings of Dr. Podd and Dr. Patterson support the conclusion that Mr. Royal's mental illness contributed at least ⅓ to his commission of the book thefts. Recognizing that the determination of downward departures is not an exact science, the Court concludes for the reasons stated that it is reasonable to give the Defendant a downward departure of five offense levels, placing him in Zone B of the Sentencing Guidelines, with an offense level of 10, and a mandated sentence of six to twelve months.

IV. *Judgment*

Pursuant to the United States Sentencing Guidelines Section 5K2.13, it is the judgment of the Court that the Defendant, Mr. Lloyd Royal, Jr. be sentenced as follows:

1. Probation of five years that includes the following conditions:

a. Incarceration of one month; the defendant to voluntarily surrender himself, and serve his sentence at a near-by institution if possible;

b. Home detention for five months;

c. Compliance with all rules and regulations of the U.S. Probation Office;

d. Payment by Defendant of a special assessment of $100.00 to the United States within one year of this date;

e. Participation by Mr. Royal in a program for treatment of mental illness, which shall include counseling and may include medications if prescribed by appropriate mental health professionals. Mr. Royal is required to follow any treatment modality ordered by the treating clinician, although he shall be fully informed and educated about the use of such medications;

f. Employment;

g. Pursuant to Section 5E1.2(f) of the Guidelines, all fines are waived, including the costs of supervision, as the Defendant does not have the ability to pay.

The Defendant has the right to appeal this sentence pursuant to Fed.R.Crim.P. 32(c)(5) and 18 U.S.C. § 3742 within ten days from the day of entry of the judgment, or of a notice of appeal by the government.