**UNITED STATES of America,
Appellant,**

v.

**Wayne ADONIS, Appellee.**

**No. 89–3051.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 31, 1989.

Decided Nov. 28, 1989.

Mary Ellen Abrecht, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Judith R. Retchin, Asst. U.S. Attys., were on the brief, for appellant.

Jensen E. Barber (appointed by this Court), for appellee.

Before WALD, Chief Judge, and MIKVA, Circuit Judge and GESELL,* District Judge.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

This is a government appeal, pursuant to 18 U.S.C. § 3742(b), of a sentence of three years imprisonment and two years supervised release imposed by a district judge on appellee Wayne Adonis.[1]   Because we

---

\* The Honorable Gerhard A. Gesell, of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1.  18 U.S.C. § 3742(b) provides in relevant part:
    (b) The government ... may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(2) was imposed as an incorrect application of the Sentencing Guidelines;
(3) is less than the sentence specified in the applicable guideline range to the extent that the sentence includes a lesser ... term of imprisonment ... than the minimum established in the guideline range.

agree with the government that the judge failed to explain adequately why he departed from the Federal Sentencing Guidelines ("Guidelines"), we set aside the prison term and remand the case for a new sentencing hearing. We affirm the sentence of two years supervised release, however, as it comports with § 5D1.2(b)(3) of the Guidelines and the government does not contest it.

## I. BACKGROUND

According to the government's proffer at the plea hearing, in August of 1988, police responded to a burglary-in-progress report at an apartment in the District of Columbia. Upon arriving at the apartment, the police found Adonis sitting on a sofa, apparently "fumbling with the area near where he was seated." Plea Hearing 27. After a co-defendant dropped a plastic bag in Adonis' lap, police officers approached Adonis and recovered that bag and another one found beside him. Combined, the bags contained 356 grams of cocaine base. The police also found in the apartment a triple beam scale, plastic packets used to package cocaine and a pouch containing $4,000 divided into four separate $1,000 packets.

Consequently, Adonis was arrested and indicted for conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 and possession with intent to distribute cocaine in excess of 50 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Rather than go to trial on the charged counts, however, Adonis and the government entered into an agreement pursuant to which Adonis pled guilty to an information charging conspiracy under 18 U.S.C. § 371, which carries a maximum sentence of five years.[2]

Prior to imposing sentence on Adonis, the judge said the following:

**2.** Section 371 provides in relevant part that: If two or more persons conspire either to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**3.** While we accept the government's explanation, we note that at the plea hearing, the

As far as I am concerned, the defendant was a limited participant, compared to the co-defendant. He is relatively not, not at the highest mental, and other, capacity in the world. There are other factors. He has really no prior involvement with the law, in any criminal activity.

So far as the seriousness of the offense is concerned, which the government argues, I agree that it is a serious offense. But if it's so serious, I really can't understand why the government charged him with conspiracy, which carries a five-year maximum, instead of charging him with *distribution* of cocaine, which would have caused him to be sentenced under the guidelines to twelve to fifteen years, and maybe more. I don't know whether possibly a twenty-year maximum or even minimum.

The government has seen fit to disregard completely both the statute and the guidelines by charging him with an offense which carries a five-year maximum, and it comes insisting that I follow the guidelines, as the government interprets them, which the government has disregarded.... I am not going to sentence to five years when the government has denigrated the seriousness of the offense by not charging him with the real offense that he committed.

Sentencing Hearing 5–6 (emphasis added).

At argument on this appeal, the government explained *for the first time* that it had offered Adonis the opportunity to plead to conspiracy rather than go to trial on the § 841 count because of "proof problems."[3] As it turned out, a witness on whose testimony the government had been counting to implicate Adonis in the distribution scheme had become unavailable.

government attorney attempted to condition the plea on the defendant's promise not to raise a pre-trial suppression motion. While the judge refused this condition and the plea still went forward, this episode raises a question as to whether the government offered the plea in order to sidestep a suppression hearing. Sentencing Hearing 2–12.

According to the government, this fact was not made a part of the record below because the judge had not asked the government to explain why it had offered the plea agreement.

## II. ANALYSIS

The government argues that it is difficult to glean from the judge's discussion of the sentence he imposed whether he meant to apply the Guidelines or to depart from them. Nonetheless, it asserts that in either case, he erred. Under the Guidelines, the government argues, the proper prison sentence for Adonis is five years. Alternatively, the government asserts, if the judge meant to depart from the Guidelines, he did so unlawfully, as the reasons he gave for departing were adequately addressed by the Sentencing Commission in its promulgation of the Guidelines.

While we believe that the judge departed from the Guidelines, we will first briefly address the application issue.

### A. *Application of the Guidelines*

■ If the judge meant to apply the Guidelines, he did so incorrectly.

Section 1B1.1 of the Guidelines, entitled "Application Instructions," establishes by nine steps, (a) through (i), the order in which various sentencing factors are to be considered. The offense level is tentatively set in steps (a) and (b) through application of chapter two, then adjusted in steps (c), (d) and (e) by application of chapter three. The relevant Guidelines range is then determined by application of steps (f) through (h). Step (i) requires consideration of factors that may be relevant to determining *nonprison* components of sentences, *i.e.*, supervised release, or that may justify *departure* from the Guidelines.

In this case, steps (a) and (b) call for application of § 2X1.1 and § 2D1.1(a)(3), the Guidelines provisions relevant to conspiracy under 18 U.S.C. § 371, the object of

which is to possess with intent to distribute between 150 and 499 grams of cocaine base. The resulting base offense level is 34. Invoking the factors that the judge enumerated at the sentencing hearing in making downward adjustments provided for by steps (c) through (e), the adjusted offense level would be 28 (a four-level reduction, pursuant to § 3B1.2(a), for minimal participation, and a two-level reduction, pursuant to § 3E1.1(a), for acceptance of responsibility). Next, following steps (f) and (g) by matching offense level 28 with criminal history category "I," the appropriate category for zero to 1 past offenses, the grid provided by chapter 5, part A of the Guidelines indicates a general guideline range of 78 to 97 months. Finally, and most important, step (h) dictates determination of the particular Guidelines range through application of parts B through G of chapter 5. Parts B through F are irrelevant to the Guidelines range at issue here —78 to 97 months—but part G is crucial. The statutory maximum for the offense to which Adonis pled guilty—conspiracy under 18 U.S.C. § 371—is 60 months, and § 5G1.1 of the Guidelines provides that:

> If application of the guidelines results in a sentence above the maximum authorized by the statute for the offense of the conviction, the statutory maximum shall be the guideline sentence.

Thus if the judge meant to follow the Guidelines, he should have sentenced Adonis to 60 months in prison.[4]

### B. *Departure From the Guidelines*

■ The judge's comments prior to imposing sentence indicate to us, however, that he recognized that the Guidelines produce the result the government urges but nonetheless departed from the Guidelines range. Moreover, the argument presented by appellee in his brief is based on that assumption. We agree with the government that the explanation the judge gave for departing was insufficient.

---

**4.** The judge had the authority, however, to waive the $10,000 fine authorized by § 371, notwithstanding the command of § 5G1.1. Section 5E1.2(f) vests the sentencing judge with the power to waive fines where he finds the defendant "is not likely to become able to pay all or part of the fine." At the sentencing hearing, the judge specifically found Adonis to be indigent. Sentencing Hearing 7.

18 U.S.C. § 3553(b) provides that a court must impose the sentence indicated by the Guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, *not adequately taken into consideration* by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." (Emphasis added.) The judge did not explain how the mitigating factors he invoked at the sentencing hearing were not adequately considered by the Sentencing Commission.

The judge noted that Adonis was a limited participant in the offense, that he had no prior involvement with the law, and that he was of somewhat limited mental capacity. These, along with unspecified "other factors," and a possible perception of Guidelines manipulation by the government attorney, presumably provided the basis for the judge's departure.

The government is correct to note, however, that the "limited participation" and "no prior wrongdoing" factors were explicitly considered by the Sentencing Commission in developing the Guidelines. *See Sentencing Guidelines* §§ 3B1.2 ("Mitigating Role") and 4A1.1 ("Criminal History Category"). And regarding the judge's reference to Adonis' intelligence, the Guidelines permit downward departure for diminished mental capacity only for a defendant "suffering significantly from reduced mental capacity," and only where that reduced capacity contributed to the commission of the offense. *See* § 5K2.13. Had the judge adequately addressed this provision, we might have been able to uphold his departure. But the judge neither explained the basis of his belief that Adonis' mental capacity is reduced nor linked Adonis' mental capacity to the offense for which Adonis was convicted. Finally, the judge's opaque reference to "other factors" is not sufficient explanation to justify departure from the Guidelines.

Consequently, we find that if the judge departed, the reasons he offered are not "of a kind or degree that may appropriately be relied upon to justify departure." *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied, Diaz–Villafane v. United States*, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989) (finding that plenary review of the reasons given for departure from the Guidelines should be the threshold prong of a tripartite test for review of departures). Therefore, pursuant to 18 U.S.C. § 3742(f)(2)(B), we vacate the three year term of imprisonment and remand for a new sentencing hearing for either a new sentence or a better justification for the departure.

■ As noted above, another reason the judge may have departed was his concern, apparent from the comments he made prior to sentencing, that the prosecutor was attempting to predetermine an "inadequate" Guidelines sentence by way of offering a plea. The judge was right to be disturbed, as the Guidelines recognize that unless care is taken, plea bargaining under the Guidelines could create the unhappy result of "turn[ing] over to the prosecutor the power to determine the sentence by increasing or decreasing the number of counts in an indictment." *Sentencing Guidelines* 1.6, November 1, 1989. Thus the Guidelines authorize a "sentencing court [to] control any inappropriate manipulation of the indictment through use of its power to *depart* from the specific guideline sentence." *Id.* (emphasis added).

The judge's belief that the government was attempting to manipulate the Guidelines is understandable in view of his ignorance of the reason for the plea offer. It was not until oral argument on appeal that the government attorney explained that the government offered the plea for legitimate, nonmanipulative reasons. At argument, the government conceded that it chose to forego the § 841 count of possession with intent to distribute because of "proof problems": a witness upon whom it had intended to rely to help prove the element of distribution had become unavailable subsequent to its filing of the § 841 indictment.[5]

---

5. The Prosecutor's Handbook on Sentencing Guidelines, November 1, 1987, referring to Unit-ed States Sentencing Commission Guideline Manual Policy statement § 6B1.2(a), which re-

The government also conceded that this fact was not made a part of the record below.

Had the judge been aware of this crucial fact, he would not have been concerned about manipulation. But on the other hand, he might have been more reluctant to accept the plea, and his attitude toward the sentence may well have been different. Indeed, rather than not "understand[ing] why the government charged [Adonis] with conspiracy, which carries a five year maximum, instead of charging [Adonis] with *distribution* of cocaine, which would have caused him to be sentenced under the guidelines to twelve to fifteen years, and maybe more," the judge would have understood precisely why the government did not follow through on the more serious distribution charge. Sentencing Hearing 5 (emphasis added).

Here, the judge was constrained from departing upwards by the conspiracy statute's five-year maximum prison term. But were a factually similar case to arise, distinguishable only in that the judge were not constrained by a statutorily prescribed maximum sentence, the judge would likely choose to depart, taking into account the "aggravating circumstances" underlying the more serious dropped charge. In other words, in cases where the government enters a plea for lack of proof of the more serious offense, unless it informs the sentencing judge of the reasons for its willingness to offer the plea, the government has an unfair advantage: It locks in a Guidelines sentence with the potential for upward departure based on facts it merely has to proffer at a plea hearing rather than prove at trial.

We therefore urge the government in the future to inform the sentencing judge when the reason it has chosen to offer a plea to a lesser offense is lack of proof on a greater one.[6] By so doing, it will enable the judge to bring a more informed judgment to bear both on whether to accept a plea and whether to depart from a Guidelines sentence. As a result, prosecutors will be left to prosecute and judges to sentence, and we believe that is as the Guidelines meant it to be.

### III. CONCLUSION

While it is regrettable that the government did not inform the sentencing judge as to its reason for offering a plea to a lesser offense, the Guidelines require a five year term of imprisonment, unless the judge adequately explains a departure theory. We therefore remand for a new sentencing hearing at which the judge should follow the Guidelines or adequately explain his departure therefrom.

*So ordered.*

---

quires that post-plea bargaining charges "adequately reflect the seriousness of the actual offense behavior," makes clear that when a prosecutor is encountering proof problems regarding a greater offense, offering a plea to a lesser one does not constitute Guidelines' manipulation. Handbook, pp. 46–47.

**6.** Again, we feel compelled to note that while we accept this explanation of the government's reason for offering the plea, it is somewhat inconsistent with the government's attempt to condition the plea on the defendant's promise not to raise a pre-trial suppression motion.