UNITED STATES of America, Appellant,

v.

Anita PERKINS, Appellee.

No. 91–3174.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 10, 1992.

Decided May 8, 1992.

Thomas J. Tourish, Jr., Asst. U.S. Atty.,
with whom Jay B. Stephens, U.S. Atty.,
John R. Fisher, Roy W. McLeese, III, and
Carol Fortine, Asst. U.S. Attys., were on
the brief, for appellant.

A.J. Kramer, Federal Public Defender,
for appellee.

Before: MIKVA, Chief Judge, SILBERMAN and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

This case, according to the district court, involves "an addict leading an undercover agent to somebody who is selling some crack so she can get a little crack for herself." Anita Perkins, an outpatient at St. Elizabeth's hospital, was convicted of distributing less than one gram of cocaine after she led a police officer to her co-defendant, D'Andre Richardson. The district court felt compelled to sentence Mrs. Perkins not only for the 826 milligrams she distributed, but also for 55 grams later found in Mr. Richardson's house. This dramatically increased her minimum sentence. Based on the testimony of her psychologist, however, the district court then reduced Mrs. Perkins's sentence by precisely the amount it had added because it found, among other things, that she was suffering from "reduced mental capacity" caused by a "dependent personality disorder."

The government argues that the only identifiable symptom of the disorder—"poor judgment"—is rampant among most criminal defendants. The Public Defender objects that the government caricatures Mrs. Perkins's obvious mental illness. We cannot say whether the disorder is a permissible ground for departure in this case, because the district court failed to give reasons explaining the nature and scope of its decision to depart. On remand, it will have a chance to give reasons. But we think that the district court was also too quick to assume that Guidelines *require* it to include Mr. Richardson's drugs in Mrs. Perkins's "relevant conduct." On remand, the court should make a specific finding about whether Mr. Richardson's drugs were "reasonably foreseeable" to Mrs. Perkins. If they were not, then Mrs. Perkins's base level should not be increased, and the downward departure confusion can be avoided entirely.

## I. BACKGROUND

"What are you looking for?" Mrs. Perkins asked two undercover officers on July 9, 1989. The officers replied that they wanted to buy a $20 rock of crack; and Mrs. Perkins led them to her co-defendant, Mr. Richardson, who sold them a rock that weighed 826 milligrams.

At trial, Mrs. Perkins testified that she was addicted to crack, and intended only to possess the drug, not to distribute it. To support her habit, she testified, she had previously traded sex for drugs, but as she got older, she occasionally took people to get drugs from local distributors, receiving a piece of the drugs in return. In this case, she testified that she hoped to get a piece of crack from the undercover officer, not from the distributor, Mr. Richardson. She denied that she worked for Mr. Richardson, or that she knew him by name. (The officers testified, however, that Mrs. Perkins told them "she normally works with" the drug dealers at 2256 High Street, S.E. 8/2/90 Tr. at 16–17.) Finally, Mrs. Perkins testified that she "begged" the officers for a piece of the crack, but they "wouldn't give me a piece. I begged both of them." 8/2/90 Tr. at 58–61. A jury convicted Mrs. Perkins of distributing a "detectable amount" of crack cocaine on August 2, 1990.

Mrs. Perkins had no previous convictions. But in the presentence report provided to the district court, the probation officer attributed to Mrs. Perkins not only the 826 milligrams of crack distributed to the undercover officer, but also the 55 grams seized from Mr. Richardson. The report concluded that the much larger amount was "relevant conduct" under Guidelines § 1B1.3(a)(2). Accordingly, it calculated Mrs. Perkins base offense level as 32, rather than the 16 points she would have received if she had been sentenced on the basis of the 826 milligrams of which she was actually convicted. The difference between the two offense levels is dramatic: 97 to 121 months in prison, rather than 15 to 21 months (both sentences take into account a two point downward adjustment for "acceptance of responsibility" under

§ 3E1.1(a) of the guidelines). Mrs. Perkins filed a memorandum before sentencing arguing that Mr. Richardson's 55 grams should not be included in her base offense level.

The presentence report also emphasized Mrs. Perkins's mental illness:

> The defendant is presently in an outpatient status at St. Elizabeth's Hospital, Washington, D.C. Medical records at St. Elizabeth's Hospital reflect that Mrs. Perkins was admitted there on September 30, 1985, and was discharged on March 6, 1986 as an outpatient. She was suffering from Borderline Personality Disorder. The records note that upon admission, she was suicidal and homicidal with impaired insight and judgment.... The defendant is currently receiving Prolixin as medication for her mental illness.

Invoking Guidelines § 5K.13, Mrs. Perkins said she suffered from a "significantly reduced mental capacity" that contributed to the commission of her offense; and she asked the district court to depart downward from the guideline range.

The district court held an evidentiary hearing on Mrs. Perkins's request for a downward departure on the basis of her diminished capacity. Two psychologists testified: Dr. Thomas B. Drummond for Mrs. Perkins diagnosed a "dependent personality disorder"; Dr. William J. Stejskal for the government diagnosed a "borderline personality disorder." Dr. Drummond testified that Mrs. Perkins's "tendency to depend on other people is far beyond normal," and that her dependent personality was "strikingly beyond normal." When the district court asked whether the disorder substantially contributed to the offense, Dr. Drummond replied that Mrs. Perkins's tendency to direct people to drug distributors and to ask for drugs in return was "a very vivid example of her dependency." 1/24/91 Tr. at 17.

Dr. Stejskal, for his part, concluded that Mrs. Perkins suffered from borderline, rather than dependent, personality disorder, which suggested a "potential" for significantly reduced mental capacity. Based on his conversations with Mrs. Perkins and a review of her medical records, however, he did not believe that Mrs. Perkins suffered from reduced mental capacity in July, 1989.

Finding the testimony of Dr. Drummond "on the whole, more persuasive and more credible" than the testimony of Dr. Stejskal, the district court held "that this defendant was suffering from a significantly reduced mental capacity" that did not result from drugs, justifying downward departure under Guidelines § 5K2.13. 5/13/91 Tr. at 12. Accordingly, it sentenced Mrs. Perkins to 15 months, followed by supervised release for two years.

The government challenges the departure, arguing that the finding of significantly reduced mental capacity was unsupported and the scope of the downward departure was unreasonable.

## II. ANALYSIS

### A. *Diminished Capacity*

■ The Sentencing Reform Act of 1984 allows the Government to appeal for review of a sentence imposed in violation of the law, as a result of incorrect applications of the Guidelines, or if the district court departed downward from the Guidelines. 18 U.S.C. § 3742(b). In a recent decision, the Supreme Court emphasized the "narrow scope of review" of a district court's decision to depart:

> [T]he reviewing court is obliged to conduct two separate inquiries. First, was the sentence imposed either in violation of law or as a result of an incorrect application of the Guidelines? If so, a remand is required under [18 U.S.C.] § 3742(f)(1). If the court concludes that the departure is not the result of an error in interpreting the Guidelines, it should proceed to the second step: is the resulting sentence an unreasonably high or low departure from the relevant guideline range? If so, a remand is required under § 3742(f)(2).

*Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 60 U.S.L.W. 4206, 4209 (U.S. March 9, 1992).

■ The Sentencing Guidelines also require the district court to "state in open court the reasons for its imposition of the particular sentence," and in the case of departures, "the specific reason for the imposition of a sentence different from that described." 18 U.S.C. § 3553(c). In reviewing the nature and scope of the sentence, therefore, we must consider the reasons given by the district court.

We begin with the first inquiry: was Mrs. Perkins's sentence imposed, as the government argues, in violation of the law or as a result of incorrect application of the guidelines?

### 1. *The Nature of the Departure*

Section 5K2.13 of the Sentencing Guidelines, "Diminished Capacity," says:

> If the defendant committed a non-violent offense while suffering from a significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

In this case, the district court ordered a departure under 5K2.13 because of Dr. Drummond's testimony about Mrs. Perkins's "dependent personality disorder:"

> I find that this defendant did have diminished capacity at the time of the offense.... Dr. Drummond testified that she had a dependent personality disorder. One of the symptoms of that disorder, according to Dr. Drummond, was that a person exhibits poor judgement and is easily influenced by others. And that her conduct in the offense was related to that disorder.

5/13/91 Tr. at 11.

The government argues that "poor judgment" and passive behavior are typical of most criminal defendants in Mrs. Perkins's situation; and if poor judgment alone created an entitlement to more lenient sentences, then it is hard to imagine any defendant who couldn't plausibly invoke it.

The Public Defender replies that the government badly caricatures the district court's finding. Dr. Drummond testified that Mrs. Perkins's "tendency to depend on other people is far beyond normal," and that her dependent personality was "strikingly beyond normal." Poor judgment, the Public Defender argues, was the district court's shorthand for Mrs. Perkins's dependent personality disorder—a recognized psychiatric illness. Even the government's witness never testified that Mrs. Perkins's mental illness was not serious or severe. And the government itself does not suggest that dependent personality disorder could *never* support a departure under the Guidelines—nor does it provide any medical evidence that might help us to approach the question.

■ We agree that the government unfairly trivializes Mrs. Perkins's mental illness by suggesting that she suffered from nothing more than "poor judgment"; but we recognize that the district court's terse finding invites the caricature. We are concerned, too, that the district court may (inadvertently) have stretched the "diminished mental capacity" exception beyond the limits that the Sentencing Commission intended. We cannot say, however, whether the district court erred as a matter of law in holding that Mrs. Perkins's "dependent personality disorder" entitled her to a downward departure for "diminished mental capacity," because the district court failed to make adequate factual findings to explain the reasons for its departure, as 18 U.S.C. § 3553(c) requires.

In particular, the court failed adequately to explore the "the extent to which reduced mental capacity contributed to the commission of the offense" under Guideline 5K2.13. "Had the judge adequately addressed this provision," we noted in *United States v. Adonis,* 891 F.2d 300 (D.C.Cir. 1989), "we might have been able to uphold his departure. But the judge neither explained the basis of his belief that [the defendant's] mental capacity is reduced nor linked [his] mental capacity to the offense for which [he] was convicted." *Id.* at 303.

The Policy Statement introducing the discussion of Grounds for Departure also says that where "the applicable offense guideline and adjustments do take into consideration a factor listed in this subpart, departure from the applicable guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense." Guidelines § 5K2.0. Although Dr. Drummond testified that Mrs. Perkins's dependent personality was "strikingly beyond normal," it is not clear from the record whether he was comparing Mrs. Perkins to the population at large, or to other defendants who have committed similar offenses. The district court, for its part, failed to explore whether the symptoms of Mrs. Perkins's dependent personality disorder are "substantially in excess" of those "ordinarily involved" in the offense for which she was convicted, Guidelines 5K2.0.

Because the district court failed to give reasons explaining the connection between Mrs. Perkins's disorder and her offense, and the degree to which her symptoms were "substantially in excess" of others in her position, a remand is required under 18 U.S.C. § 3742(f)(1). *Williams,* — U.S. at ——, 112 S.Ct. at 1120. If the court chooses to pursue the "diminished mental capacity" departure on remand, it should satisfy itself that there is adequate information in the record to support both findings; and it should give specific reasons for its conclusions.

### 2. *The Extent of the Departure*

On to the second inquiry: assuming that a downward departure for diminished mental capacity is permissible, was the scope of the departure unreasonable? There is, at the outset, a mathematical dispute about how far the district court actually departed: the government says seven years; Mrs. Perkins says four.

The dispute concerns the district court's opaque comments at the sentencing hearing, where it never identified the guideline range it would have applied without the departure. "If the government is correct," it said initially, Mrs. Perkins "would have

to be sentenced to a range between 97 and 121 months." The court then suggested in passing, "I would have no problem reducing the Guideline sentence by the appropriate amount for a minimal role in the offense, and that would bring her sentence down to 63 to 78 months." "However," the court continued, "I don't have to explore that much further, because I find that this defendant did have diminished capacity at the time of the offense." The court concluded, "[t]aking all that into consideration, I sentence you to imprisonment for 15 months, to be followed by supervised release of 3 years." 5/13/91 Tr. at 10–13.

The government argues that the district court chose a seven year departure, from the base level of 97–121 months. The Public Defender counters that since the district court said it would have adjusted the offense level four points for Mrs. Perkins's minimal role, the reduction for diminished capacity was only an additional three years. Guidelines, § 3B1.2(a). In our view, it is impossible to say whether the departure was seven years or four years or three, because the district court offered no clear explanation for the departure it chose.

■ The Sentencing Reform Act and the Supreme Court say clearly that trial judges must give reasons explaining the extent as well as the nature of their decisions to depart.

In assessing reasonableness under [18 U.S.C.] § 3742(f)(2), the Act directs a court of appeals to examine the factors to be considered in imposing a sentence under the Guidelines, as well as the district court's stated reasons for the imposition of the particular sentence. § 3742(e). A sentence can thus be "reasonable" even if some of the reasons given by the district court to justify the departure from the presumptive guideline range are invalid, provided that the remaining reasons are sufficient to justify the magnitude of the departure.

*Williams,* 60 U.S.L.W. at 4209.

■ Other circuits have emphasized that the structural principles of the Sentencing Guidelines—uniformity and proportionality, for example—require district courts to jus-

tify the magnitude of their departures for "diminished capacity." *See, e.g., United States v. Gentry*, 925 F.2d 186, 189 (7th Cir.1991); *see also United States v. Lira–Barraza*, 941 F.2d 745, 749–51 (9th Cir. 1991) (en banc); *United States v. Jackson*, 921 F.2d 985, 989–90 (10th Cir.1990) (en banc). *Cf. United States v. Molina*, 952 F.2d 514 (D.C.Cir.1992) (district court's discretion to depart under criminal history provision, § 4A1.3, is not unfettered, and impressionistic departure decisions will not be upheld). Section 5K2.12 itself, finally, provides a straightforward standard for evaluating diminished capacity departures: "a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense."

The text and structure of the guidelines, in short, persuade us that the district court erred when it failed to give specific reasons explaining the extent of its departure. If it chooses to depart again, it should correct the error on remand.

### B. *Reasonably Foreseeable*

■ The district court's assessment of the role of any diminished capacity will necessarily be affected by the sentence otherwise generated by the Guidelines. This question turns, of course, on whether the Guidelines require the court to include Mr. Richardson's 55 grams in Mrs. Perkins's "relevant conduct," as it assumed. The disputed provision is § 1B1.3, comment (n. 1), which defines relevant conduct for criminal activity undertaken in concert with others to include conduct of others in furtherance thereof that was "reasonably foreseeable by the defendant."

■ The district court did not at any point make a specific finding about foreseeability. In sentencing Mrs. Perkins, it mistakenly assumed that it was "bound" to charge Mrs. Perkins with everything that Mr. Richardson had in his possession, regardless of foreseeability: "I am bound by what the Sentencing Commission does in that respect and says in that respect, although I consider it utterly ridiculous...." 5/13/91 Tr. at 10. On remand, the court

should decide whether a preponderance of the evidence supports the inference that the 55 grams found in Mr. Richardson's house were reasonably foreseeable to Mrs. Perkins. It should then specifically determine the applicable guideline range before addressing the issue of diminished capacity.

Because the foreseeability question was not briefed or argued, we will give no independent guidance to the district court about the factors it should consider in making its finding. We considered the question in passing, however, in *United States v. Lam Kwong–Wah*, 924 F.2d 298, 306–07 & n. 5 (D.C.Cir.1991) (remanding for specific findings on foreseeability where there was a dispute about whether the defendant should have known the total weight involved in a heroin transaction, or only the weight of the first installment). Other circuits have addressed the question in greater detail. *See, e.g., United States v. Garcia*, 954 F.2d 12 (1st Cir.1992) ("Where the guidelines hold sway, the measure of a defendant's accountability for drug transactions in which he was not personally involved is usually congruent with the scope of his agreement with the other participants in the criminal enterprise."); *United States v. Copeland*, 902 F.2d 1046 (2d Cir. 1990) (affirming a relevant conduct finding after district court also found that defendant had served his codefendants as a "steerer"); *United States v. North*, 900 F.2d 131, 134 (8th Cir.1990) (district court improperly enhanced the defendant's sentence for other sales by his drug supplier that had no connection to sales transacted between them in furtherance of their conspiracy).

### III. CONCLUSION

We remand to allow the district court to reconsider its decision to depart downward under § 5K2.13 and to determine specifically whether Mrs. Perkins was suffering from a significantly diminished mental capacity that contributed to her offense. If so, then the court must provide reasons for the extent of its departure. Before reaching the departure issues, however, the dis-

trict court should calculate the applicable guideline range and determine whether Mr. Richardson's drugs were reasonably foreseeable to Mrs. Perkins. If not, then her base level should not be increased.

*So ordered.*