# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 9, 2008            Decided June 3, 2008

No. 07-3132

IN RE SEALED CASE

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cr00278)

———

*David B. Smith* argued the cause for appellants.

*Katherine M. Kelly*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, *Roy W. McLeese, III* and *Ann H. Petalas*, Assistant U.S. Attorneys.

Before: GINSBURG, BROWN, and KAVANAUGH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* BROWN.

Dissenting opinion filed by *Circuit Judge* KAVANAUGH.

BROWN, *Circuit Judge*: The defendant appeals his eighteen month prison sentence after revocation of supervised

release.  We vacate the sentence and remand for the district court to explain its reasoning.

I

Appellant pled guilty in 1999 to two counts of distribution of cocaine base, one count of unlawful use of a "communication facility," *see* 21 U.S.C. § 843(b), and one count of carrying a firearm during a drug-trafficking offense. Under the terms of his plea agreement, he cooperated extensively with the Bureau of Alcohol, Tobacco, and Firearms (ATF), helping the government to convict an impressive number of drug traffickers.  At his eventual sentencing in 2006, the government rewarded his remarkably productive efforts by moving for a downward departure from the Sentencing Guidelines.  The district court obliged, sentencing him to time served and five years of supervised release.

After a series of disputes between Appellant and his probation officers, Appellent found himself back before the district court.  At bottom, the disputes over supervision arose because Appellant moved out of the District of Columbia but continued to work in this area.  His new probation officer might have approved of his occasional trips, but Appellant repeatedly failed to notify his probation officer about his travel plans.  In addition, Appellant resisted requests to provide his probation officer with required financial information, proferring only his bank statement when he was asked for detailed accounting.  In May 2007, the officer decided to place Appellant on house arrest with electronic monitoring for four months.  Appellant refused to accept this sanction; the probation officer responded by transferring the case back to the District of Columbia and filing a Non-Compliance Report.  Finally, in August 2007, the District of

Columbia probation office asked the sentencing court to revoke Appellant's supervised release because of these violations.

During two days of hearings, Appellant explained his work, his travel, and his financial situation, and his probation officers testified about his failure to communicate with them. An ATF agent also vouched for the quality of Appellant's cooperation. At the conclusion of the hearing, the district judge specifically found Appellant had committed several of the violations charged by the probation office. The judge also said any defendant who came back before him for violating his supervised release faced only one question: "how long he's going to prison for, not whether he's going," Hr'g Tr. 298, Nov. 26–27, 2007. The district judge pointed out he had explained this policy to the defendant at the original sentencing. Further, the judge explained Appellant "cannot be supervised, he would not be supervised, he will not be supervised." *Id*. Having decided to revoke the release, the district judge told counsel he was "going to consider an upward departure," recognizing the Sentencing Guidelines recommendation was three to nine months in prison but observing he had discretion to sentence Appellant to five years because of his underlying convictions. *Id*. at 298–99. The probation office requested the full five-year sentence, while the government recommended twelve months; but Appellant's counsel argued for a lenient sentence for violations even the government deemed relatively minor. In the end, the district judge sentenced Appellant to eighteen months' incarceration, giving no further explanation of his reasons.

Appellant challenges this sentence as unreasonable, both substantively (because eighteen months is too much for what he claims were minor violations) and procedurally (because

the district judge failed to state reasons for the sentence). Appellant also appeals the decision to revoke his supervised release because he claims the judge applied a uniform policy rather than considering his individual circumstances. We reject that challenge, but we cannot assess whether the eighteen-month sentence is unreasonable in the absence of any explanation. Accordingly, we vacate the sentence and remand the case to the district court.

## II

### A

Discretion over sentencing lies entirely with district courts, and we may only review a court's decision for abuse of discretion if it is procedurally sound. *Gall v. United States*, 128 S. Ct. 586, 597–98 (2007); *see also United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (applying *Gall* to a revocation of supervised release). This allocation of responsibility arises from the Sentencing Act, which continues, even after *United States v. Booker*, 543 U.S. 220 (2005), to restrict our jurisdiction over sentencing appeals to such matters as sentences imposed "in violation of law." 18 U.S.C. § 3742(a)(1); *United States v. Dorcely*, 454 F.3d 366, 373 (D.C. Cir. 2006) (interpreting § 3742(a)(1) to allow review for reasonableness). "Practical considerations also underlie this legal principle." *Gall*, 128 S. Ct. at 597. "[D]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations," since they see many more sentencing cases. *Id*. at 598. And a sentencing judge will generally have greater familiarity "with the individual case and the individual defendant before him," due partly to its direct involvement with testimony. *Id*. at 597.

Given the broad substantive discretion afforded to district courts in sentencing, there are concomitant procedural requirements they must follow. These requirements serve two primary purposes: they develop an adequate record so that appellate courts can perform substantive review, and they guarantee that sentencing judges continue "to consider every convicted person as an individual," *Gall*, 128 S. Ct. at 598. Both the Sentencing Act and the relevant precedent spell out what a district judge must do. The judge "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id*. at 596. Next, after hearing argument from the parties, the judge should consider "all of the § 3553(a) factors to determine whether they support the sentence requested by a party," and "make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 596–97; *see also* 18 U.S.C. § 3553(a); § 3583(e)(3) (citing particular § 3553(a) factors as relevant for a decision to revoke supervised release). If the court decides to impose a sentence outside the Guidelines, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S. Ct. at 597. In particular, "a major departure should be supported by a more significant justification than a minor one." *Id*. Finally, the judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id*. The degree of explanation required depends on the circumstances. At a minimum, a sentencing judge must "state in open court the reasons for [his] imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence departs from the relevant guideline or policy statement, the reasons "must also be stated with specificity in the written order of judgment and commitment." § 3553(c)(2).

Enforcing these procedural requirements is a major component of abuse of discretion review. *See Gall*, 128 S. Ct. at 597. Before even considering the substantive aspects of a sentence, we "must first ensure that the district court committed no significant procedural error, such as . . . failing to adequately explain the chosen sentence." *Id.* Although a district judge need not consider every § 3553(a) factor in every case, and we generally presume the judge "knew and applied the law correctly," *United States v. Godines*, 433 F.3d 68, 70 (D.C. Cir. 2006) (per curiam), certain minimal requirements are indispensable. When a district judge fails to provide a statement of reasons, as § 3553(c) requires, the sentence is imposed in violation of law. *See United States v. Perkins*, 963 F.2d 1523, 1526–27 (D.C. Cir. 1992) (citing 18 U.S.C. § 3742(f)(1)); *see also United States v. Williams*, 438 F.3d 1272, 1274 (11th Cir. 2006) (per curiam) (without a statement, "*the sentence is imposed in violation of law*" (emphasis in original)). If a sentence falls under § 3553(c)(2), a written statement must accompany the judgment, and it must "at least state why [a] cited factor justified departure" from the guidelines. *United States v. Ogbeide*, 911 F.2d 793, 795 (D.C. Cir. 1990).

B

Appellant did not object to the district judge's failure to explain his reasons either orally or in writing; nor did he object to the district court's application of a one-strike policy for revoking supervised release. We therefore review the sentence for plain error. *See United States v. Dozier*, 162 F.3d 120, 125–26 (D.C. Cir. 1998).

The district judge apparently decided to revoke Appellant's supervised release because that was his standard policy. Such a policy seems inconsistent with a district

judge's responsibility to decide each defendant's sentence based on his individual circumstances, considering the factors the Sentencing Act prescribes as relevant. *See* 18 U.S.C. § 3583(e)(3) (a court may "revoke a term of supervised release" after considering certain of the factors in § 3553(a)); *id*. § 3553(a) (listing factors); *cf. Gall*, 128 S. Ct. at 596–97 (a district court "may not presume that the Guidelines range is reasonable"). Nevertheless, this error was not prejudicial, because the judge also specifically found Appellant had committed several violations of his release conditions and explained he thought the defendant incapable of supervision. The judge further said he doubted he had excused such serious violations before. Since revocation was certainly within the contemplation of the Guidelines, this alternative reasoning was not clearly insufficient. *Cf. Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence . . . in the typical case, and that the judge has found that the case before him is typical.")

On the other hand, the judge imposed an eighteen-month sentence without providing any explanation at all. The government parses the terse statements of the sentencing judge to find some explanation for Appellant's sentence. The government suggests what little the judge said is enough for this court to review the sentence and contends the complete absence of a written statement is not prejudicial. However, the writing requirement is not a mere formality. The requirements that a sentencing judge provide a specific reason for a departure and that he commit that reason to writing work together to ensure a sentence is well-considered. Besides, the district judge mentioned his conclusion that Appellant cannot be supervised only in reference to his decision to revoke his release. The judge gave no explanation at all for choosing a

sentence of eighteen months, twice the Guidelines maximum for this defendant and greater than the maxima for Class C violators with much more serious criminal histories. U.S. SENTENCING GUIDELINES MANUAL § 7B1.4(a) (2007). The government justifies the eighteen months by citing Application Note 4, which suggests an upward departure may be warranted "[w]here the original sentence was the result of a downward departure." *Id*. § 7B1.4 cmt. n.4. But this argument is *post hoc*, and the judge said no such thing. Nor does the government's argument provide any justification for the particular "degree of the variance," *Gall*, 128 S. Ct. at 597. So far as we can tell, the district judge's choice of eighteen months was arbitrary.

In making this observation, we are compelled by the Sentencing Act, under which the Guidelines are still relevant. The fact that eighteen months is twice the Guidelines maximum matters because § 3553(c)(2) requires not just a statement of reasons, and not just a written statement of reasons, but a statement explaining the reason for a departure from a guideline or policy statement "with specificity." *See Rita*, 127 S. Ct. at 2468–69 (noting the run-of-the-mill statement of reasons would not suffice for a departure); *id.* at 2483 (Scalia, J., dissenting) (noting § 3553(c)(2) still applies after *Booker*); *Gall*, 128 S. Ct. at 597 (finding it "uncontroversial" that greater departures need more detailed explanations).

We join the Second Circuit in holding that the failure to provide a statement of reasons as required by § 3553(c) is plain error, "even when the length of the resulting sentence would otherwise be reasonable." *United States v. Hirliman*, 503 F.3d 212, 215 (2d Cir. 2007). The error itself is obvious enough. And "the required showing of prejudice should be slightly less exacting [for sentencing] than it is in the context

of trial errors." *United States v. Saro*, 24 F.3d 283, 287 (D.C. Cir. 1994). The absence of a statement of reasons is prejudicial in itself because it precludes appellate review of the substantive reasonableness of the sentence, *United States v. Lewis*, 424 F.3d 239, 247 (2d Cir. 2005), thus "seriously affect[ing] the fairness, integrity, or public reputation of judicial proceedings," *United States v. Williams*, 488 F.3d 1004, 1008 (D.C. Cir. 2007). A district judge "must adequately explain the chosen sentence . . . to promote the perception of fair sentencing." *Gall*, 128 S. Ct. at 597. It is important not only for the defendant but also for "the public to learn why the defendant received a particular sentence." *Lewis*, 424 F.3d at 247. Arbitrary decisionmaking undermines "understanding of, trust in, and respect for the court and its proceedings." *Id.* We assume Appellant's sentence of eighteen months was not randomly selected, but the absence of any explanation makes it seem so. Thus, a failure to comply with § 3553(c) causes grave institutional harm, as well as simultaneously depriving the defendant of the benefit of our review. This failure is therefore plain error.

III

Without a statement of reasons, we are "unable to determine" whether Appellant's sentence is reasonable. *Ogbeide*, 911 F.2d at 795. Accordingly, we must vacate the sentence and remand for resentencing in accordance with this opinion.

*So ordered.*

KAVANAUGH, *Circuit Judge*, dissenting:  The defendant pled guilty to drug trafficking and gun offenses.  Because of his extensive cooperation with the Government, the defendant gained a significant break at his sentencing, receiving only a term of time served and supervised release instead of the 87 to 108 months' imprisonment contemplated by the Sentencing Guidelines.  But the defendant then repeatedly violated the conditions of his supervised release.  After the probation officer reported the violations to the District Court, the court held a two-day hearing that lasted more than eight hours.  At the conclusion, the District Court found that the defendant had violated supervised release.  The court revoked supervised release and sentenced the defendant to 18 months' imprisonment – below the 60-month statutory maximum recommended by the probation office but above the Guidelines range of three to nine months' imprisonment for supervised-release violations.  The District Court explained that the defendant had repeatedly violated supervised release in various ways, was not amenable to supervision, and had received a break at his initial sentencing.

The majority opinion vacates the District Court's sentence; the opinion agrees with the defendant that the sentence was insufficiently explained under *Gall v. United States*, 128 S. Ct. 586, 597 (2007).  The majority opinion criticizes the District Court for providing "no explanation at all"; for imposing a sentence that seems "arbitrary"; for making an "obvious" error; for imposing a sentence that appears "randomly selected"; for causing "grave institutional harm"; and for "depriving the defendant of the benefit of our review."  Maj. Op. at 7, 8, 9.  I find those characterizations of the District Court's decision incorrect and entirely unwarranted.  I would hold that the District Court adequately explained the 18-month sentence and easily satisfied the procedural requirements of *Gall*.

In my judgment, the majority opinion illustrates the magnetic pull that the Guidelines still occasionally exert over appellate courts in cases involving sentences outside the Guidelines range. *See* Maj. Op. at 7-9. To be sure, the Supreme Court's remedial opinion in *Booker* was open to multiple readings and could have been interpreted to preserve this kind of Guidelines-centric appellate review. *See Gall*, 128 S. Ct. at 604 (Alito, J., dissenting); *United States v. Booker*, 543 U.S. 220, 311-12 (2005) (Scalia, J., dissenting in part) (Remedial opinion "may lead some courts of appeals to conclude . . . that little has changed."); *United States v. Henry*, 472 F.3d 910, 918-22 (D.C. Cir. 2007) (Kavanaugh, J., concurring). But the Court's recent decisions in *Rita, Kimbrough*, and *Gall*, as I read them, do not permit such an approach; appellate review is for abuse of discretion and is limited to assessing only whether certain procedural requirements were met and whether the sentence is substantively "reasonable." Recognizing that the governing Supreme Court decisions are not entirely unambiguous, and despite my serious concerns about the sentencing disparities that could well ensue as a result of the current case law, *see Gall*, 128 S. Ct. at 604-05 (Alito, J., dissenting), I think our appellate role in the *Booker-Rita-Kimbrough-Gall* sentencing world is more limited than the majority opinion suggests. *See Gall*, 128 S. Ct. at 602 (reversing Eighth Circuit decision: "On abuse-of-discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence."); *Kimbrough v. United States*, 128 S. Ct. 558, 576 (2007) (reversing Fourth Circuit decision: "Giving due respect to the District Court's reasoned appraisal, a reviewing court could not rationally conclude that the 4.5-year sentence reduction Kimbrough received qualified as an abuse of discretion.").

3

I

The Supreme Court recently set forth the role of appeals courts in reviewing sentences: We must review a sentence under an abuse of discretion standard, ensuring both that the District Court did not commit a "significant procedural error" and that the sentence is substantively reasonable. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). In assessing procedural compliance, we are to ensure that the District Court did not: incorrectly calculate the Guidelines range, fail to consider the § 3553(a) factors, rely on clearly erroneous facts, treat the Guidelines as mandatory, or fail to explain the chosen sentence and any deviation from the Guidelines range. *Id.*; *see also* 18 U.S.C. § 3553(c) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence" and must give "the specific reason for the imposition of a sentence" outside the Guidelines range.).

A

In this case, the District Court committed no procedural error, much less "significant procedural error," under *Gall*.

The District Court's hearing on whether to revoke the defendant's supervised release lasted more than eight hours. After listening to testimony and argument, the District Court found that the defendant had repeatedly violated his supervised release. The District Court thoroughly detailed the defendant's violations, including three instances of the defendant's leaving the judicial district without permission, two instances of the defendant's failing to follow the probation officer's instructions, and the defendant's repeated failure to provide "complete and truthful financial information" to verify his income. Nov. 27 Tr. at 298.

4

In light of those facts, the court possessed authority under 18 U.S.C. § 3583(e) to revoke the defendant's supervised release. *See also* U.S. SENTENCING GUIDELINES MANUAL § 7B1.3(a). The court did so, stating: "I find that [the defendant] has violated the conditions of supervised release and his supervised release is revoked." Nov. 27 Tr. at 296.

The District Court then correctly calculated the Guidelines range of three to nine months applicable to ordinary violations of supervised release. *See* U.S.S.G. § 7B1.4. But the court pointed out that it had discretion under *United States v. Booker*, 543 U.S. 220 (2005), and later cases to sentence the defendant up to the statutory maximum of 60 months. *See* 18 U.S.C. § 3583(e). The court stated that it would consider a sentence above the Guidelines range and gave each side an opportunity to make its case for the appropriate sentence.[1]

The Assistant U.S. Attorney suggested a sentence of 12 months but said it would defer to the probation office's recommendation. The probation officer then stated that the defendant was not amenable to supervision and was unwilling

---

[1] I refer to the recommended range under § 7B1.4 as a Guidelines range even though it is technically a policy-statement range. *See* U.S.S.G. ch. 7, pt. A, introductory cmts. 1, 3 ("After considered debate," the Commission "has chosen to promulgate policy statements only" – not Guidelines – with respect to supervised-release revocation to give "greater flexibility to both the Commission and the courts" and to "provide better opportunities for evaluation by the courts and the Commission. . . . After an adequate period of evaluation, the Commission intends to promulgate revocation guidelines."). Because I would rule in favor of the Government in this case, I need not address the question whether a district court has even broader discretion to depart or vary from a policy-statement range.

to cooperate with conditions of supervised release. He expressed particular concern with the defendant's failure to verify his income so as to justify what he was spending. The probation officer argued that the defendant's string of violations presented "a serious matter" and ultimately recommended the statutory maximum sentence of 60 months' imprisonment, stating that it was the first time in his career he had recommended the maximum sentence for violations of supervised release. Nov. 27 Tr. at 302.

The defendant's counsel argued that under Application Note 1 to § 7B1.3, revocation is appropriate only for a *second* adjudication of this kind of supervised-release violation (although, in fact, the Application Note does not say that). Because this was the defendant's first such adjudication, defense counsel argued that revocation was inappropriate. He also stated that the defendant had worked as an informant for the Government and had a family to support. He further argued that if the court were to decide to revoke the defendant's supervised release, any upward departure or variance from the three-to-nine-month range would be unwarranted.

After hearing from the parties, the District Court stated that the defendant's initial sentence of no prison time was the result of a downward departure and that the court could have sentenced him at that time to 108 months in prison. The court explained that it had granted the defendant a downward departure because "he had demonstrated that he was amenable to supervision, but he's now demonstrated that he's not." Nov. 27 Tr. at 304-05. The court emphasized that the defendant "never once ever verified" his income, as required by the probation officer, and stressed again that the defendant was "not amenable to supervision." *Id.* at 305, 307. The court also reminded the defendant of its warning at the initial

sentencing that a break in sentencing "comes once in a lifetime." *Id.* at 308. The court then sentenced the defendant to prison for 18 months, above the general three-to-nine-month Guidelines range but below the probation office's recommendation of the statutory maximum of 60 months.

I would hold that the District Court correctly calculated the Guidelines range, adequately considered the §3553(a) factors,[2] did not rely on clearly erroneous facts, did not treat the Guidelines as mandatory, and sufficiently explained the reasons for the above-Guidelines sentence. There was no procedural error, much less "significant procedural error," under *Gall*.

B

The majority opinion vacates the sentence because it says the District Court did not give "any explanation at all" for imposing an 18-month sentence. Maj. Op. at 7. As the above recitation shows, however, the record contradicts the majority opinion's conclusion.

In support of its holding, the majority opinion contends that "the district judge mentioned his conclusion that [the defendant] cannot be supervised only in reference to his decision to revoke his release." *Id.* The opinion mistakenly divides the sentencing proceeding into a "revocation" phase and a "sentencing" phase. The opinion cites no authority for requiring a rigid temporal divide between a court's decision to revoke supervised release and its imposition of the ultimate

---

[2] *See United States v. Godines*, 433 F.3d 68, 70 (D.C. Cir. 2006) ("[W]e begin our review with the presumption that the district court knew and applied the law correctly.") (internal quotation marks omitted).

sentence for the violation of supervised release. The Guidelines contemplate a single proceeding: "When the court finds that the defendant violated a condition of supervised release, it may continue the defendant on supervised release, with or without extending the term or modifying the conditions, or revoke supervised release and impose a term of imprisonment." U.S.S.G. ch. 7, pt. A, introductory cmt. 2(b). In this case, the fair implication – indeed, the only implication – from the hearing transcript is that the District Court's stated reasons supported both revocation and the ultimate sentence of 18 months. By constructing an arbitrary divide between revocation and sentence, the majority opinion refuses to give the District Court's statements their fair import.

Even on its own terms, moreover, the majority opinion's reasoning is flawed because the District Court's opinion satisfies this rigid divide. *After* the District Court stated that it would revoke the defendant's supervised release, the District Court heard argument about the length of the sentence. It then reiterated several reasons that justified not only revocation, but also the sentence it planned to impose. The court underscored "the most significant violation": that the defendant had "never once ever verified" his income, making it impossible for the court to verify that "the earnings were not from drug dealing." Nov. 27 Tr. at 298, 305. The court stated *twice* that the defendant was "not amenable to supervision." *Id.* at 307; *see also id.* at 304-05. The court also referred to its downward departure from the recommended Guidelines range at the defendant's original sentencing (from a possible 108-month prison term to supervised release), and it reminded the defendant of its warning that such a break would come "once in a lifetime." *Id.* at 308.

To be sure, the District Court gave all of these reasons before it said "18 months." But I am not aware of any requirement that sentencing judges articulate the length of the sentence before the reasons, as opposed to articulating the reasons before the length of the sentence.

The majority opinion also claims that the District Court provided no justification "for the particular degree of the variance" from the three-to-nine-month Guidelines range. Maj. Op. at 8 (internal quotation marks omitted). The opinion emphasizes that the 18-month sentence is "twice the Guidelines maximum for this defendant and greater than the maxima for Class C violators with much more serious criminal histories." *Id.* This analysis reflects a misunderstanding of the relevant Guideline and ignores the District Court's reasoning. The defendant here received a major downward departure at his initial sentencing. The Guidelines recognize this situation as a special case. Application Note 4 to Guidelines § 7B1.4 states: "Where the original sentence was the result of a downward departure (e.g., as a reward for substantial assistance), . . . an upward departure may be warranted" when sentencing for a violation of supervised release. The majority opinion dismisses the Application Note as a "*post hoc*" appellate argument because the District Court did not specifically refer to it during the sentencing proceedings. Maj. Op. at 8. Yet the majority opinion cites no authority for the proposition that a district court must cite the relevant provision of a Guidelines *Application Note* each time it imposes a sentence. As we have said repeatedly, a sentencing court is presumed to know the law. *See United States v. Godines*, 433 F.3d 68, 70 (D.C. Cir. 2006). The District Court here referred to its earlier downward departure, which is exactly what the Application Note contemplates a district court should do. *See* Nov. 27 Tr. at 304 ("[W]hen I sentenced him in July of '06 and gave him

that break, I could have sentenced him then to 108 months . . . ."). We must presume that the District Court knew that the earlier downward departure was relevant to whether an upward departure or variance from the three-to-nine-month range was warranted under Guidelines § 7B1.4.

Moreover, in saying the District Court should have provided more explanation, the majority opinion gives undue weight to the fact that the 18-month sentence was "*twice* the Guidelines maximum." Maj. Op. at 8 (emphasis added). The Supreme Court has rejected "the use of a rigid mathematical formula that uses the *percentage* of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall*, 128 S. Ct. at 595 (emphasis added). Of direct relevance here, the Supreme Court has explained that "deviations from the Guidelines range will always appear more extreme – in percentage terms – when the range itself is low." *Id.* Although the *absolute* amount of a departure or variance is apparently relevant under *Gall* to the extent of explanation required, the percentage increase from the departure or variance is not. Because a nine-month additional sentence is not a particularly significant increase, there is no basis to require the District Court to give any more detailed explanation than in an ordinary outside-the-Guidelines case. The majority opinion does not acknowledge this point.

In sum, the majority opinion's reasons for vacating the District Court's 18-month sentence are unpersuasive in light of the record in this case.[3]

---

[3] Although the District Court stated in open court its reasons for departing from the Guidelines range, it did not issue a *written* statement of those reasons. *See* 18 U.S.C. § 3553(c)(2) ("[I]f the sentence . . . is outside the [Guidelines] range, . . . the specific reason for the imposition of a sentence different from that

10

C

Because I would reject the defendant's procedural argument, I also must consider his contention that his 18-month sentence is substantively unreasonable. That argument both misreads the Guidelines and, in any event, overstates the current appellate role in enforcing the Guidelines.

First, even under the Guidelines, an upward departure to 18 months was entirely appropriate in these circumstances. Remember that the Guidelines Application Note states that "[w]here the original sentence was the result of a downward departure (e.g., as a reward for substantial assistance), . . . an upward departure may be warranted." U.S.S.G. § 7B1.4 app. n.4. This case thus plainly falls within the category of expressly authorized departures.

Second, in any event, the Guidelines are no longer mandatory. And under the *Booker-Rita-Kimbrough-Gall* system, the District Court's decision to impose a sentence of 18 months (that is, to depart or vary upward by nine months)

---

described . . . must also be stated with specificity in the written order of judgment and commitment . . . ."). Because the defendant failed to raise this issue below, our review is for plain error. *See United States v. Simpson*, 430 F.3d 1177, 1183 (D.C. Cir. 2005). A district court's failure to memorialize in writing the reasons the court gave orally cannot constitute plain error: Failing to do so could not possibly "affect[] the outcome of the district court proceedings" or "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1183 (internal quotation marks omitted); *see also United States v. Verkhoglyad*, 516 F.3d 122, 133, 137 (2d Cir. 2008) (finding "no plain error" and stating that omitting written statement "in the face of sufficient oral reasons will rarely rise to the level of plain error"); *United States v. Loggins*, 165 Fed. App'x 785, 788-89 (11th Cir. 2006) (same).

is not substantively unreasonable. The defendant – who had previously pled guilty to serious drug-trafficking and gun offenses but had not been sentenced to imprisonment – was not amenable to supervision and had repeatedly violated his supervised release. Moreover, "*both* the sentencing judge and the Sentencing Commission" have "reached the *same* conclusion" – that an upward departure or variance above nine months is warranted in these circumstances. *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007). As when a District Court gives a defendant a within-Guidelines sentence, this "double determination significantly increases the likelihood that" departure or variance is reasonable. *Id.*

The defendant's argument ignores critical language from *Gall* rejecting a presumption of unreasonableness or a heightened standard of review for non-Guidelines sentences – whether "just outside" or even "significantly outside the Guidelines range." 128 S. Ct. at 591. Abuse-of-discretion review takes into account "the totality of the circumstances, including the extent of any variance from the Guidelines range," but "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 597. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

Given the totality of the circumstances in this case, the 18-month sentence is substantively reasonable.

## II

By treating the Guidelines range as talismanic for our appellate review, the defendant's argument demonstrates a serious misunderstanding of the impact of *Booker*,

*Kimbrough*, *Rita*, and *Gall* on the current sentencing regime. To satisfy the Sixth Amendment, the Supreme Court has said the Guidelines must be and are *advisory*. Our substantive review of district court sentences accordingly must be limited. Otherwise, the term "advisory" will lose all meaning, and the Sixth Amendment problem with the Guidelines will persist. *See Kimbrough v. United States*, 128 S. Ct. 558, 577 (2007) (Scalia, J., concurring); *United States v. Henry*, 472 F.3d 910, 918-22 (D.C. Cir. 2007) (Kavanaugh, J., concurring).

Taken together, *Booker*, *Rita*, *Kimbrough*, and *Gall* mean something that courts of appeals can be loath to admit: At sentencing, different district judges can now do things differently. One district judge may be more lenient; another more stringent. One may tend to sentence within the Guidelines; another may not. One may vary downward from the crack Guidelines; another may not. This kind of sentencing-judge-to-sentencing-judge disparity cannot be our concern as an appellate court, at least so long as the sentence in a particular case is generally reasonable and the sentencing court has met its procedural obligations.[4] For defendants, this new world means their sentences will sometimes be shorter than under the old mandatory Guidelines system and sometimes longer (as in this case). Sentencing inevitably will be less predictable. Whether a sentence will be within, shorter than, or longer than the Guidelines range for any given defendant will depend largely on one primary factor: which district judge is assigned to the case.

---

[4] However it came about, the system now is one of advisory Guidelines where district judges must "explain their sentencing decisions on the record, with the availability of appellate review under an abuse-of-discretion standard" – just as Professor Stith and Judge Cabranes proposed a decade ago as a policy matter. KATE STITH & JOSÉ A. CABRANES, FEAR OF JUDGING 172 (1998).

To be sure, the sentencing-judge-to-sentencing-judge disparities that may develop under this *Booker-Rita-Kimbrough-Gall* regime are cause for serious concern. *See Gall v. United States*, 128 S. Ct. 586, 604-05 (2007) (Alito, J., dissenting). But as I understand the state of the case law, that concern must be addressed by Congress. For example, Congress could decide to make the Guidelines mandatory again, with the jury finding key sentencing facts so as to avoid the Sixth Amendment problem the Supreme Court found in *Booker*. In the meantime, I believe we are constrained by *Booker*, *Rita*, *Kimbrough*, and *Gall* to exercise very deferential substantive review of sentencing decisions. Along the same lines, the Supreme Court's decisions counsel that our procedural review not become a backdoor way of effectively mandating within-Guidelines sentences.

\* \* \*

On remand, I expect that the District Court will simply state (actually, re-state) its findings that the defendant repeatedly violated the conditions of release and is not amenable to supervised release; explicitly invoke Application Note 4 to Guidelines § 7B1.4; say the facts warrant revocation and an upward departure or variance to 18 months; and issue a written order. Because I believe the District Court has already provided the explanation that the Supreme Court in *Gall* required – and indeed has already provided the explanation that the majority opinion seems to require – I respectfully dissent.